**WJR, THE GOODWILL STATION, Inc. v. FEDERAL COMMUNICATIONS COMMISSION (COASTAL PLAINS BROADCASTING CO., Inc., Intervener).**

No. 9464.

United States Court of Appeals District of Columbia Circuit.

Reargued June 11, 1947.*

Decided Oct. 7, 1948.

* Originally argued March 13, 1947, before Groner, Chief Justice, and Clark and Prettyman, Associate Justices; reargued by direction of the court before Stephens, Edgerton. Clark, Wilbur K. Miller and Prettyman, Associate Justices, June 11–12, 1947.

PRETTYMAN and EDGERTON, Associate Justices, dissenting.

See also 174 F.2d 248.

Mr. Kelley E. Griffith, with whom Messrs. Louis G. Caldwell, Reed T. Rollo and Percy H. Russell, Jr., were on the brief, for appellant.

Mr. Max Goldman, Attorney, Federal Communications Commission, with whom Mr. Benedict P. Cottone, General Counsel, Mr. Harry M. Plotkin, Assistant General Counsel, and Mr. Paul Dobin, Attorney, Federal Communications Commission, who entered appearances, were on the brief, for appellee.

Mr. Frank U. Fletcher, who entered an appearance, for intervener.

Mr. Robert T. Barton, Jr., who was permitted to argue as amicus curiae, urged affirmance.

Before STEPHENS, EDGERTON, CLARK, WILBUR K. MILLER, and PRETTYMAN, Associate Justices.

STEPHENS, Associate Justice:

This is an appeal by WJR, The Goodwill Station, Inc. (hereafter referred to as WJR), from a decision of the Federal Communications Commission of August 22, 1946, granting without hearing the application of the Coastal Plains Broadcasting Company, Inc., the intervener herein (hereafter referred to as Coastal Plains), for a construction permit to erect a new standard broadcast station.[1] WJR seeks relief also in the appeal from a decision and order of the Commission of December 17, 1946, denying without hearing the appellant's petition for reconsideration of the Commission's decision of August 22, 1946.

Station WJR, located in Detroit, Michigan, is a Class I-A clear channel station with a non-directional antenna, licensed by the Commission to broadcast without time limit on an assigned frequency of 760 kilocycles with 50 kilowatts power, the maximum power with which any station may operate under Section 3.22 of the Commission's Rules and Regulations (hereafter referred to as rules). In 1945 in response to the request of several Class I-A stations for increases in authorized power and in response to the requests of other parties for new stations to operate on Class I-A channels, the Commission instituted a rule—making proceeding called the "Clear Channel Hearing." This hearing, as characterized by the Commission in its order for the same, was for the purpose, among oth-

---

[1] The application for the permit was made by, and the permit was granted to, the Tarboro Broadcasting Company, Inc.; but before this appeal was taken that company changed its name to Coastal Plains Broadcasting Company, Inc.

er things, of determining "What minimum power and what maximum power should be required or authorized for operation on clear channels" and "Whether and to what extent the authorization of power for clear channel stations in excess of 50,000 watts [50 kilowatts] would unfavorably affect the economic ability of other stations to operate in the public interest." During the pendency of this Clear Channel Hearing the Commission on June 21, 1946, announced a policy of considering on their individual merits applications involving use of I-A channels, daytime or limited time, where the proposed station is 750 miles or less from the dominant I-A station using a non-directional antenna on the frequency requested. It was pursuant to this policy that the Commission on August 22, 1946, granted the application of Coastal Plains for a permit to construct a radio station. This station was to be located at Tarboro, North Carolina, for operation with 1 kilowatt power daytime only on a 760 kilocycle frequency, to wit, the same frequency as that on which, as above stated, WJR operates.

Pursuant to Section 405 of the Communications Act, 47 U.S.C.A. § 151 et seq., WJR filed with the Commission a petition for reconsideration of the decision of August 22, 1946. Therein it requested that the Coastal Plains application be designated for a hearing before the Commission in which WJR could participate. WJR alleged that its present interference-free service area would be subjected to objectionable interference by the operation of the Coastal Plains station. An engineering affidavit filed in support of the petition stated that the service of WJR would be interfered with between 10 a. m. and 2 p. m. in all of upper Michigan and in several counties or fractional parts of counties in lower Michigan, an area in which the field intensity of WJR averages 32 microvolts per meter or less during daytime hours, and stated further that in much of this region WJR provided the best signal available. WJR's petition alleged also that the "FCC Radio Survey, July 1945," a part of the record in the Clear Channel Hearing, showed it was the most listened to station in the areas of Michigan above mentioned.

In effect WJR's petition asserted that granting the Coastal Plains application would constitute an indirect modification of WJR's license. As an alternative to its prayer for a hearing WJR requested that action on the Coastal Plains application be deferred until the conclusion of the Clear Channel Hearing, asserting as a foundation for this alternative request that if the Commission as a result of the Clear Channel Hearing should amend its rules so as to permit clear channel stations to operate with increased power, a prior grant of the Coastal Plains application would make it difficult for the Commission to grant any increase to WJR.

Coastal Plains filed with the Commission an opposition to the petition of WJR. The opposition was, so far as here pertinent, in effect what in common law terms is a demurrer, and under modern practice a motion to dismiss; that is to say, the opposition raised the question whether or not the allegations in the petition, assuming their truth, showed that the operation of the Coastal Plains station would cause objectionable interference to WJR within its normally protected contour and service area as defined by the Commission's rules and Standards of Good Engineering Practice (hereafter referred to as standards).

By its decision and order of December 17, 1946, the Commission denied without a hearing of any kind WJR's petition for reconsideration. In so ruling it treated the petition as if on demurrer. In its decision the Commission ruled that WJR was not entitled to be heard in respect of the application of Coastal Plains for the reason that under the Commission's rules and standards WJR as a Class I-A station was normally protected daytime to the 100 microvolt per meter contour, and that the area which it sought to have protected by virtue of its petition and supporting affidavit was served during the daytime with a signal intensity of 32 microvolts per meter or less and was therefore outside the normally protected contour. With reference to the alternative request of WJR, the Commission ruled that it would not serve the public interest to refuse licenses on Class I-A frequencies to Class II stations such as Coastal Plains because of the

possibility that the Commission might determine in the Clear Channel Hearing that the power of Class I-A stations should be increased.

The questions for decision in the appeal are: I. Whether in accordance with WJR's alternative prayer action on the Coastal Plains application should be deferred until conclusion of the Clear Channel Hearing. II. If the answer to this question is in the negative, is WJR entitled to a hearing before the Commission as to the sufficiency of the allegations of its petition, assuming their truth, to show indirect modification of its license by the granting of the Coastal Plains application. III. If the answer to this question is in the affirmative, i. e., if the Commission erred in its denial of such a hearing, may this court nevertheless rule upon the question whether the decision of the Commission —that the allegations of WJR's petition, assuming their truth, do not show an indirect modification of its license by the granting of the Coastal Plains application—was correct. IV. Whether WJR's prayer for hearing fails to request the hearing for which it contends on this appeal and whether this failure forecloses WJR's right to such a hearing.

## I.

■ Should the Commission's action on the Coastal Plains application be deferred, in accordance with WJR's alternative prayer, until the conclusion of the Clear Channel Hearing: The answer to this question is in the negative. It is true that if as a result of the Clear Channel Hearing WJR's power were increased substantially above its 50 kilowatt authorization, its 100 microvolt per meter contour would be correspondingly increased and the operation of the Coastal Plains station might then cause interference within that protected area. But there are two difficulties with WJR's contention in this aspect of the case. First, to sustain WJR's contention it must be assumed (1) that the Commission will amend its rules so as to permit clear channel stations to operate with increased power; (2) that WJR will itself be granted an increase in power and that the resultant protected area under its li-

cense will be sufficiently extensive to include the area in which the operation of the Coastal Plains station will cause objectionable interference within the rules and standards of the Commission. WJR has no present rights in these supposititious eventualities. Second, the contention of WJR would require this court to direct the order in which the Commission shall consider its cases. This we cannot do. If by reason of procedural malarrangement the Commission commits error in the disposition of a given case, that error can be considered as can any other. But this court cannot direct in advance the order of precedence in the Commission's calendar.

## II.

■ Preliminarily it is to be noted that in such cases as this case and L. B. Wilson, Inc. v. Federal Communications Commission, 1948, 83 U.S.App.D.C. 176, 170 F.2d 793, hereafter referred to as the Wilson case, there are two principal issues. The first is whether the operation of the applicant station (such as Coastal Plains) will cause "objectionable interference" to the outstanding station (such as WJR) within its "protected contour" (within the technical meaning of the quoted terms under the Communications Act and the rules and standards of the Commission), i. e., whether there will result from the granting of a permit to the applicant station an indirect modification of the outstanding station's license. The second issue, which arises only upon an affirmative answer to the first, is whether the public interest, convenience and necessity (hereafter referred to as public interest) require this interference, i. e., this indirect modification of the outstanding license. No hearing need be held on the second issue—no determination thereof need be made—unless the first issue is determined in the affirmative. But if the first is determined in the affirmative, then there must be a hearing on the second—this under the ruling in Federal Communications Commission v. National Broadcasting Co., Inc. (KOA), 1943, 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374 (hereafter referred to as the KOA case). In determining the answer to the first principal issue the Commission may

deal separately with two questions, one of law, the other of fact: In dealing with the first question the Commission will determine whether or not the petition of the outstanding station (requesting a hearing as to the propriety of the grant of a license to the applicant station) alleges facts which if true "show" that objectionable interference within the protected contour of the outstanding station will be caused by operation of the applicant station. This is a question of law to be answered in terms of the Communications Act, the Commission's rules and standards, and pertinent judicial decisions. In determining this question first the Commission is in effect treating the petition of the outstanding station as if on demurrer.[2] If this question is answered in the negative, the petition may be dismissed and there need be no determination of the second principal issue whether or not public interest requires indirect modification of the outstanding license: if the allegations of the petition, assuming their truth, do not "show" objectionable interference to the outstanding license within its protected contour their truth is immaterial since not even on the face of the allegations will there be an indirect modification of the outstanding license within the meaning of the decision of the Supreme Court in the KOA case; hence there will be no need of a hearing under the KOA decision on the issue whether or not the public interest requires such a modification. But if the question of law as to the sufficiency of the allegations to show objectionable interference is answered in the affirmative, then the Commission must determine the question of fact as to the truth of the allegations of the petition (if the applicant station disputes their truth) and in so doing must hold a hearing at which the petitioner— the outstanding station—shall be allowed to introduce evidence of the truth of the allegations and the applicant station evidence to the contrary if it desires. If the facts alleged are found not to be true then again no hearing on the second principal issue which arises in this class of cases, i. e., whether public interest requires the indirect modification of the outstanding license, need be held since the allegations of objectionable interference will not have been proved. But if the facts alleged are found to be true, a hearing on the second principal issue will be requisite under the KOA decision. On all of the foregoing the members of this court are in agreement.

 The principal point of contention in the instant case—and the only point of division within the court as reflected by this opinion and the minority opinion—is on the question whether or not the determination of the point of law above described can properly be made without a hearing. In terms of the instant case, can the Commission without a hearing determine whether the allegations of the petition of WJR, assuming their truth, do "show" objectionable interference within WJR's protected contour by the operation

---

[2] It is pointed out in the Wilson case that the Commission may at the threshold of consideration of an issue modification vel non of an outstanding license by the proposed operations of another station treat that issue as if on demurrer and thereby avoid the necessity of hearing proof of the truth of allegations of objectionable interference if as a matter of law they do not "show" such interference within the Commission's rules and standards.

It is to be noted that in the Wilson case there was before the Commission a question of fact and a question of mixed fact and law. This was because the petition for reconsideration in that case alleged that according to physical data within the Commission's files there would be objectionable interference to the outstanding station by the operation of the applicant (Stanton) station. In court procedure such an allegation would have been subject to a bill of particulars to bring this physical data to the face of the petition and then on demurrer the question of law whether, under the allegations of the petition, including this physical data, objectionable interference was "shown" would have been determined. But nothing equivalent to a bill of particulars appearing to exist in the Commission's practice, it was necessary to rule in the Wilson case that there must be a hearing on the petition as to all the questions presented, whether of law, fact, or mixed fact and law. In the instant case the question presented by the Coastal Plains opposition to the petition of WJR for reconsideration is one of law alone.

of the applicant station, Coastal Plains. It is the contention of the Commission that it can decide that question *ex parte, i. e.,* without giving WJR an opportunity to argue orally, an opportunity to try to convince the Commission that the allegations of its petition do, assuming their truth, "show" objectionable interference. In support of this position of the Commission, the minority view in this court is that unless the Commission itself *ex parte* thinks that there is a substantial question as to the sufficiency of the allegations of the petition to show objectionable interference, no hearing on that question need be held. Generalizing the minority view, it is apparently this: Until he has alleged some fact which indicates a threatened damage to or modification of some existing right, or facts which at least present a substantial question in that respect, a person has not established a right to a hearing. It is the view of the majority that due process of law, as guaranteed by the Fifth Amendment, requires a hearing, including an opportunity to make oral argument, on every question of law raised before a judicial or quasi-judicial tribunal, including questions raised by demurrer or as if on demurrer, except such questions of law as may be involved in interlocutory orders such as orders for the stay of proceedings *pendente lite,* for temporary injunctions and the like. A ruling upon a demurrer is obviously not interlocutory for if the demurrer is sustained the pleader's cause (or defense) is dismissed upon the merits; if the demurrer is overruled, the opposite party is put to a trial and the machinery of the tribunal is set in motion.

 It has been so long taken for granted by courts that the due process clause guarantee of hearing before decision includes hearing upon questions of law as well as upon questions of fact, and it has been so long taken for granted that hearings on questions of law include hearings on such questions arising under demurrers, and the practice of courts to grant such hearings has been of such long standing, that there is little authority concerning the requirements of due process in these respects. There has been no need for litigants to obtain rulings in support of

the right of hearing on questions of law when opportunity to be heard on such questions has not been denied. Dartmouth College v. Woodward, U.S.1819, 4 Wheat. 518, 581, 4 L.Ed. 629 (Webster's argument), and Galpin v. Page, U.S.1873, 18 Wall. 350, 368, 21 L.Ed. 959, cited in the Wilson case, sufficiently attest that an essential element of due process is an opportunity to be heard before the reaching of a judgment, that judgment without opportunity to be heard is judicial oppression. Londoner v. Denver, 1908, 210 U.S. 373, 28 S.Ct. 708, 52 L. Ed. 1103, Morgan v. United States, 1938, 304 U.S. 1, 58 S.Ct. 999, 82 L.Ed. 1129, Erie R. Co. v. Paterson, 1910, 79 N.J.L. 512, 76 A. 1065, also cited in the Wilson case, attest that the due process guarantee of hearing includes an opportunity for argument. Also pertinent are State v. Milhollan, 1923, 50 N.D. 184, 195 N.W. 292, and State v. City of Milwaukee, 1914, 157 Wis. 505, 147 N.W. 50. In the first of these cases the state of North Dakota on relation of an electric utility company and one of its stockholders sued to enjoin the Board of Railroad Commissioners of North Dakota from proceeding in a rate hearing under the state public utility act. On demurrer to the complaint the point made in behalf of the utility company and its stockholder was that the act permitted the Board to make its own rules and regulations as to procedure, that it could therefore set up such rules as to deny a hearing, and that the act was therefore invalid for denial of due process of law as guaranteed by both the state and Federal constitutions. The court held that the act did not permit the Board to set up such rules of procedure as to deny a hearing. It said: "The word 'hearing' contemplates an opportunity to be heard. That is, not merely the privilege to be present when the matter is being considered, but the right to present one's contention, and to support the same by proof and argument." (50 N. D. at 196, 195 N.W. at 295) In State v. City of Milwaukee the action was on certiorari by the state of Wisconsin on relation of one Arnold, a city assessor, against the city of Milwaukee and others to review certain proceedings of the common council. The relator had been removed from

his office as city assessor by proceedings before the common council under charges of having violated the civil service law. Although oral argument had been allowed before a committee of the council, the relator's counsel had by the common council been denied the right to be heard before it, and it was the body vested with the power of removal. The Supreme Court of Wisconsin held that this denial of a right to be heard before the common council vitiated the removal proceeding. In so holding it said:

> The repeated refusal of the common council to grant either the written or oral request of the relator to hear his counsel before acting upon the report of the committee stands upon a different basis. There are at least three substantial elements of a common-law hearing: (1) The right to seasonably know the charges or claims preferred; (2) the right to meet such charges or claims by competent evidence; and (3) the right to be heard by counsel upon the probative force of the evidence adduced by both sides, *and upon the law applicable thereto*. If either of these rights are denied a party, he does not have the substantials of a common-law hearing. Ekern v. McGovern, 154 Wis. 157, 277, 142 N.W. 595, 46 L.R.A. (N.S.) 796 et seq., and cases cited. That *the word "hearing" includes "oral argument"* is expressly ruled by the following cases: Miller v. Tobin (C.C.) 18 Fed. 609, 616; Joseph D. G. Co. v. Hecht, 120 Fed. 760, 763, 57 C.C.A. 64; Merritt v. Portchester, 8 Hun (N.Y.) 40, 45; Babcock v. Wolf, 70 Iowa, 676, 679, 28 N.W. 490. See, also, Akerly v. Vilas, 24 Wis. 165, 171, 1 Am.Rep. 166. Indeed, the idea of the right of a person to be heard by himself or counsel when his property or his personal rights are questioned was so early and firmly imbedded into the groundwork of our jurisprudence that it is difficult to find instances where it has been challenged even in quasi judicial proceedings. The importance and value of such right is considerable in nearly every case. It is the office of counsel to marshal the facts proven to point out their relative importance, and *to interpret them in the light of the law applicable thereto*. When this is properly done, the judicial mind is enlightened, and is in condition to decide the questions presented with full knowledge of the facts and the law involved. Its importance in the present proceeding is apparent, when it is borne in mind that the evidence taken by the committee was very voluminous, was read to the common council at a number of different sessions separated by considerable intervals of time, and was wholly circumstantial in character. The right of the relator either personally or by counsel to argue the evidence and the law to the common council, which body alone had the right to remove, is unquestioned. That the denial of

such a right was prejudicial follows from what has been said. Nothing herein contained must be construed to question the right of the body before whom a hearing is had to reasonably limit and control the length of time for oral argument. Limitation exercised in that respect would be judicially interfered with only in case of an obvious abuse of discretion.

\* \* \*

> The trial court seemed to be of the opinion that, inasmuch as the common council could, by ordinance, prescribe the manner of hearing, it could therefore *refuse to hear oral argument*. In the first place the ordinance is silent upon the question of oral argument before the common council, so it had not by ordinance prescribed a hearing without oral argument. In the second place, *authority to prescribe the manner of a hearing does not include the power to suppress or destroy a substantial constituent element of the hearing itself*. [Italics supplied] [157 Wis. at 511–2, 147 N.W. at 52–3]

In Radio Commission v. Nelson Bros. Co., 1933, 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406, cited in the Wilson case, it is held that the quasi-judicial proceedings of an administrative tribunal must satisfy the pertinent demands of due process. We ruled in the Wilson case that private as well as public interests are recognized by the Communications Act. As we said there:

> . . . While a station license does not under the Act confer an unlimited or indefeasible property right (Federal Communicataions Commission v. Sanders Bros. Radio Station, 1940, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869) —The right is limited in time and quality by *the terms of the license and is subject to suspension, modification or revocation in the public interest*—nevertheless the right under a license for a definite term to conduct a broadcasting business requiring—as it does—substantial investment is more than a mere privilege or gratuity. A broadcasting license is a thing of value to the person to whom it is issued and a business conducted under it may be the subject of injury. . . . [83 U.S.App.D.C. at 181, 170 F.2d at 798]

We ruled also in the Wilson case that the impairment of such a license right by the granting of conflicting facilities to another station is therefore *pro tanto* a deprivation of property and that the due process clause of the Fifth Amendment, providing that no person shall be deprived of life, liberty or property without due process of law, is pertinent. The authorities cited above confirm the proposition that due process includes opportunity to be heard be-

fore the reaching of a judgment, including opportunity to make argument; they confirm also that the due process guarantee of hearing, including opportunity for argument, recognizes no distinction between hearings on questions of law and those on questions of fact.

The due process guarantee of hearing in our system of law has always been recognized as a right in persons, not a privilege to be extended to persons according to the *ex parte* judgment of tribunals as to whether or not there should be a hearing. It is a personal right of access to the courts or to administrative tribunals, a right at the minimum to present one's claim of injury or threatened injury and to be heard to argue in support of the proposition that the allegations thereof, assuming their truth, are legally cognizable, *i. e.*, state a "cause of action." This right of hearing accorded by the due process clause is one of the few rights guaranteed by our Constitution which are substantially absolute. The right is subject to no limitation except such requirements as the payment of a filing fee upon presentation of the claim, or of a jury fee in a case involving a jury trial, and such restrictions as are related to the reasonable convenience of the tribunal as to time, place and length of hearing. This right of hearing stems in Magna Charta in the words:

. . . no freeman shall be arrested, or detained in prison, or deprived of his freehold, or outlawed, or banished, or in any way molested, and we will not set forth against him, nor send against him, unless by the lawful judgment of his peers and *by the law of the land.* [Italics supplied]

The right stems also in recognition of the fact that soundness of decision is promoted by hearings, that tribunals are fallible and need, in order to administer justice according to law, the aid of argument on questions of law and on the meaning of the evidence if the trial of fact issues is reached.

It is of course true that under a system of law that guarantees right of access to judicial and quasi-judicial tribunals as above explained, there will be some abuse of the right. Some claims will be presented which may upon their face appear to be, and which may indeed upon hearing be

demonstrated to be, invalid, *i. e.,* to state no "cause of action." But the inconvenience to the tribunal of considering such a claim, *i. e.,* of allowing its presentation and hearing argument in which the complainant has opportunity to try to convince the tribunal that the claim is on its face meritorious, is the unavoidable price of the due process guarantee of hearing. As said by Mr. Justice Brandeis in Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 51-2, 58 S.Ct. 459, 82 L.Ed. 638: ". . . Lawsuits . . . often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact." Paraphrasing this for pertinence to the instant situation, complaints or petitions filed in judicial or quasi-judicial tribunals are often found not to contain allegations legally sufficient for relief. But no way has been discovered of relieving a tribunal and a demurring defendant from the necessity of a hearing in which the complainant shall be given opportunity to try to convince the tribunal by argument that the complaint or petition as drawn is not groundless in law. Under our system of law one is not to be turned out of court on an *ex parte* decision that a claim is not legally cognizable and that one cannot even be heard to argue that it is.

That the due process guarantee of hearing on questions of law and fact means a right in persons, not a mere privilege to be extended to them by tribunals according to their *ex parte* judgment as to whether a hearing should be had, is illustrated in In re Galvin's Estate, 1934, 153 Misc. 11, 274 N.Y.S. 846, which dealt with the right of both notice and hearing. There an accounting executor was permitted by a surrogate to dispense with service of citation upon a known creditor upon the theory that the latter could gain nothing by appearing and attacking a decree of distribution. This was permitted under a statute providing that under named circumstances service of citation might be dispensed with, or, as the court said, authorizing the entry of an inconclusive decree without the obtaining of jurisdiction in the regular ways. Discountenancing

this statute under both the state and Federal constitutions the court used these words:

Each of the Constitutions guarantees to the citizen and only to him—not to any court—the privilege of saying whether or not he will be aggrieved by the proposed action of any court. This makes indispensable some preliminary notice, either actual or its presumptive equivalent, before the court acts; but the privilege not having been extended to the court, it cannot presume, or assume beforehand, without notice, what the citizen might or might not do were he notified. From this viewpoint of constitutional law, it is immaterial that in the judgment of the court he could not possibly be aggrieved by its proposed decree. The right is *his and his alone* to be judge of that before any court passes on it. It is a condition precedent to any court acting that the citizen shall have first had preliminary notice in one or other of the traditional forms, and *an opportunity to be heard.* [Italics supplied] [153 Misc. at 13, 274 N.Y.S. at 849]

In short, the hearing guarantee of the due process clause of the Fifth Amendment accords to every person who claims injury or threat of injury an unconditional right (subject only to such limitation as is above referred to) of access to judicial or quasi-judicial tribunals (according to their appropriate jurisdiction) to the extent at least of being allowed to present his claim and to argue that the allegations thereof if true entitle him as a matter of law to relief—to contend that his claim, assuming the truth of the allegations thereof, states a "cause of action" cognizable under the rules, principles, concepts or standards of law which the tribunal is empowered to apply; and a right, if after argument it is decided that the allegations of the claim do state a "cause of action," to present proof as to the truth of the allegations, *i. e.,* a right to a trial. The contention of the Commission in the instant case and the view of the minority in this court make this right conditional. Under the view of the minority, opportunity to be heard in argument on the question of the legal sufficiency of the allegations of a claim of injury or threatened injury (in the instant case the claim of threatened injury to WJR by the proposed operation of Coastal Plains) will not be granted except upon the condition that the tribunal to which the claim is presented thinks *ex parte* that there is a substantial

question as to whether the allegations thereof are legally sufficient. If to the tribunal, acting *ex parte,* it appears clear upon the face of the claim that it is not sufficient, no argument will be allowed. The claimant will not be permitted to try to convince the tribunal that a "cause of action" is stated. The criterion for determining whether an argument will be allowed is what the tribunal without hearing argument thinks as to the sufficiency of the claim. Right of access to courts and commissions is reduced to the right to file one's claim—to drop it, so to speak, into the governmental slot. This manner of dealing with the claims of persons who assert injury or threatened injury is in the view of the majority of this court foreign to our system of law.

The majority view may be epitomized as follows: There are in all cases in which the action of a governmental tribunal is invoked by the filing of a complaint or petition two possible questions. One, raised by demurrer or motion to dismiss or, in an administrative proceeding, by some less formally named instrument of like purpose, or by the tribunal's *sua sponte* treatment of a petition as if under demurrer, is whether or not the allegations of the party invoking the tribunal's action—assuming the truth of such allegations—state facts which the law recognizes as actionable within the ambit of the remedial powers assigned by the sovereign to the tribunal. This question, one of law, is to be determined by the consideration of legal materials, such as statutes and rules and judicial decisions, to be brought to the attention of the tribunal in the arguments of the parties. If this question of law is raised, and answered in the negative, then the party seeking the tribunal's action, unless he is allowed to amend and can amend his allegations, is disabled on the merits to proceed further. If, on the other hand, this first question is raised and answered in the affirmative, *i. e.,* by a holding that the allegations, assuming their truth, do state facts which the law recognizes as actionable within the ambit of the tribunal's powers, then the second question arises, usually by so-called traverse or answer or, in an administrative proceeding, by an op-

posing instrument of less formal name. That question is whether or not the facts alleged by the party invoking the tribunal's action are true. That is a question of fact which is to be determined by a consideration of the evidence to be produced by the parties, by cross-examination of witnesses and by argument as to the meaning and legal effect of the evidence. Guarantee of hearing, whether in the due process clause or in a statute, assures a hearing not alone on such a question of fact but also upon the threshold question of law. Unless this is true the guarantee of hearing, unless the judgment of governmental tribunals on questions of law is infallible, is worthless. For if the tribunal errs in its *ex parte* decision on the threshold question of law, then the party invoking the tribunal's aid is disabled to proceed further. He will therefore never reach a hearing on the second question— will never have the opportunity to present evidence in support of his claim of injury. It is of course true that the presentation of legal materials and argument may not persuade the tribunal to a correct decision; but it is the theory of our jurisprudence— and one justified by experience—that a tribunal is less likely to err if it hears the parties and their counsel. It is further the theory of our jurisprudence that for reasons both of fair play and of respect for government, a party claiming injury or threatened injury shall be heard in support of the legal sufficiency of his allegations before decision is made on the question of their sufficiency, and this notwithstanding that it may appear to the tribunal *ex parte* that they are legally insufficient. In no other manner can right of hearing be protected. If the line is drawn elsewhere, as by according, as the minority in this court suggests, power in the tribunal to deny hearing if it is *ex parte* of the view that the allegations of the complaint or petition are legally insufficient, then it is within the power of the tribunal to deny all parties claiming injury or threatened injury access to a governmental tribunal except to the extent of filing a claim.

The authorities relied upon by the minority do not, in the view of the majority of this court, support departure from the established precept of the due process clause and the long established practice thereunder. It would unduly prolong this opinion to discuss each of the cases cited. It will be sufficient here to state and comment upon three of them: In Beaumont, S. L. & .W Ry. Co. **v.** United States, 1930, 282 U.S. 74, 51 S.Ct. 1, 75 L.Ed. 221, the appellant railroads filed an action before a three-judge Federal district court to set aside an order of the Interstate Commerce Commission prescribing a division of joint rates between connecting railroads. The Commission and other railroads intervened. The appellants claimed that the division of rates between connecting carriers was such that it amounted to confiscation, *i. e.,* that the share going to the appellants was too small. They asserted in particular that the rates division prescribed was based on average conditions rather than on the effect on each individual railroad. The three-judge court found that the Commission had had before it evidence sufficient to disclose the effect on each railroad of the rates division and it held that the Commission could properly use averages to determine division and that there was nothing in the record to show that the Commission had not considered the effect on each carrier of the rates based on averages. The appellants urged that the division of rates prescribed by the Commission's order would deprive them of their property without due process of law. The Court held that there was nothing in the complaint or in the evidence that showed that the division of rates would not give the appellants enough to cover operating expenses plus a reasonable return and that to invoke the constitutional protection of the due process clause appellants must show that they would be denied just compensation. The Court said:

Appellants claim that the Commission's order, if enforced, will operate to deprive them of their property without due process of law in violation of the Fifth Amendment to the Constitution.

It is well-established by the decisions of this court, that, in order to invoke such constitutional protection, the facts relied upon to prevent enforcement of rates prescribed by governmental authority must be specifically alleged and from them it must clearly appear that the enforcement of the measure complained of

238

will necessarily deny to the utility the just compensation safeguarded to it by the Constitution. . . . [282 U.S. at 88, 51 S.Ct. at 6]

But this case does not rule that the question whether or not such facts are alleged can be determined without a hearing. No such question was involved in the case. It does not appear that a hearing had been denied by the three-judge court on the question whether or not the complaint filed by the appellants alleged facts necessary to raise a constitutional question. The decision of the Supreme Court is therefore neither an express nor an implied ruling that such a hearing can be validly denied. All that the case holds is that a complaint invoking constitutional protection must in order to constitute a foundation for relief allege facts from which it appears that the enforcement of a measure complained of will invade a constitutional right. This proposition the majority in the instant case do not dispute. Every complaint invoking the action of a tribunal whether under the Constitution, statutes or common law, must allege facts which constitute a "cause of action" recognized by law, otherwise the complaint will be held insufficient if demurred to. But it does not follow from this that dismissal can validly be made without according to the complainant a hearing, i. e., an opportunity to try to convince the tribunal by argument that the facts alleged do state a "cause of action." The Beaumont case does not so hold.

Bourjois, Inc. v. Chapman, 1937, 301 U. S. 183, 57 S.Ct. 691, 81 L.Ed. 1027, involved an appeal from a decree of a three-judge Federal court dismissing after trial the plaintiff's bill to enjoin as unconstitutional the enforcement of a statute of Maine requiring registration and the issuance of a certificate of registration by the Department of Health and Welfare to manufacturers, proprietors or producers of cosmetics. It appeared that the plaintiff manufactured cosmetics in New York, had no place of business in Maine, did not hold, use, apply, or sell cosmetics within the state of Maine, and that it had not applied for a certificate. Among the plaintiff's customers were some whose places of business were in Maine. Their purchases were made in part on orders given in Maine to traveling salesmen of the plaintiff, but no order so given was binding until approved by the plaintiff in New York. All shipments to Maine customers were made from New York and the sales in Maine were not made in the original packages. The plaintiff announced in the case that it would refuse to apply for a certificate because the registration statute was void under the Federal and state constitutions. The statute was attacked as a violation of the commerce clause and on other grounds including an objection that the power conferred upon the board to grant or deny a certificate was unlimited and that the board had issued no regulations and that neither the statute nor the board had provided for hearing an applicant. The Supreme Court stated that, the plaintiff not having applied for a certificate, it was not to be assumed that if it concluded to do so its application would be refused or that the board would deny any right to which it was entitled. The plaintiff urged further that relief should be granted because the provisions of the statute concerning seizure and forfeiture of unregistered cosmetics violated the constitution of Maine. As to that the Court said:

. . . To that claim it is a sufficient answer that if there is a wrongful seizure, it will be of goods belonging to others. For, as the bill and findings reveal, no goods of the plaintiff will ever be liable to seizure, since the plaintiff will have none in Maine. If under this statute the constitutional rights of others are violated by an unlawful seizure and forfeiture, they, and not the plaintiff, must seek the redress. . . . [301 U.S. at 190, 57 S. Ct. at 695]

The case holds merely that unless a plaintiff alleges (and in the event of trial shows) that he is affected by the operation of a statute, he cannot attack its constitutionality. The Court does not rule that a plaintiff need not be given an opportunity to argue that he has alleged facts from which it appears that he will be affected by the statute. No question of the right to make such an argument was involved in the case.

In California Water Service Co. v. Redding, 1938, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323, an action was brought by the appellants California Water Service Com-

pany and another to enjoin the city of Redding from receiving a grant allotted by the Federal Administrator of Public Works under Title 2 of the National Industrial Recovery Act and supplemental legislation to aid the city in the construction of a municipal water works system, and also to enjoin the city from expending the proceeds of the sale of city bonds (issued under state statutes) for the purpose of constructing such a plant. The bill of complaint filed in a three-judge Federal court alleged that the grant of Federal funds and the legislation said to authorize it were invalid under the Federal Constitution, Articles I (Sections 1, 8 and 9) and II (Sections 1 and 3) and the Tenth Amendment, and also that the grant was in violation of the Federal statutes referred to. The three-judge court decided that the bill of complaint stated no cause of action within its cognizance and dismissed the same. On appeal this was affirmed upon the ground that there was no substantial claim of unconstitutionality of a state statute or administrative order as required in Section 266 of the Judicial Code. More fully, it was held that Section 266, providing for the convening of a three-judge Federal court in an action to restrain the enforcement of a state statute on the ground of the unconstitutionality thereof under the Federal Constitution, does not apply unless a substantial question is presented, and that therefore it is the duty of a district judge to whom an application for an injunction restraining the enforcement of a state statute or order is made to scrutinize the bill of complaint to ascertain whether a substantial Federal question is presented since otherwise the provision for the convening of a court of three judges is not applicable. But the case does not hold that a plaintiff presenting such a bill of complaint can lawfully be denied the right to argue to the judge that his bill does state facts which present a substantial Federal question. The Court said also that when it becomes apparent that a plaintiff has no case for three judges, although they may be properly convened, their action is no longer prescribed. But again the case does not rule that a plaintiff cannot be heard to argue that a court has been properly convened. No such questions as to the right of argument were before the Court.

There are listed in the margin other cases relied upon by the minority.[3] Analysis thereof shows that no more than those above discussed do they support the position of the minority or the position taken by the Commission in the instant case.

■ It is urged by the minority that the due process clause reads "No person shall . . . be deprived of . . . property, without due process of law" and that one who is not injured, i. e., one who does not allege injury or threatened injury (in terms of the instant case does not allege objectionable interference within the protected contour of the outstanding station), will not be deprived of property and is hence not entitled to a hearing. The fallacy in this argument lies in an ambiguous use of the word "hearing." The word "hearing" thus used can have two meanings. One denotes a hearing on the truth of allegations made by a complainant. In that sense of the word the generalization is correct; there is no division in the court on this. No person is entitled to a trial on the issue of the truth of the facts he alleges unless such facts legally constitute a "cause of action." But the

3 Denver Stock Yard Co. v. United States, 1938, 304 U.S. 470, 58 S.Ct. 990, 32 L.Ed. 1469; Missouri Pacific R. Co. v. Norwood, 1931, 283 U.S. 249, 51 S.Ct. 458, 75 L.Ed. 1010; Aetna Insurance Co. v. Hyde, 1928, 275 U.S. 440, 48 S.Ct. 174, 72 L.Ed. 357; Lampasas v. Bell, 1901, 180 U.S. 276, 21 S.Ct. 368, 45 L.Ed. 527; Western Union Tel. Co. v. Ann Arbor Rd. Co., 1900, 178 U.S. 239, 20 S.Ct. 867, 44 L.Ed. 1052; Gold-Washing & Water Co. v. Keyes, 1878, 96 U.S. 199, 24 L.Ed. 656; Clark v. Kansas City, 1900, 176 U. S. 114, 20 S.Ct. 284, 44 L.Ed. 392; Tennessee Electric Power Co. v. T. V. A., 1939, 306 U.S. 118, 59 S.Ct. 366, 83 L. Ed. 543; Chicago Board of Trade v. Olsen, 1923, 262 U.S. 1, 43 S.Ct. 470, 67 L.Ed. 839; Electric Bond Co. v. Commission, 1938, 303 U.S. 419, 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105; Massachusetts v. Mellon, 1923, 262 U.S. 447, 43 S. Ct. 597, 67 L.Ed. 1078; Jameson & Co. v. Morgenthau, 1939, 307 U.S. 171, 59 S. Ct. 804, 83 L.Ed. 1189.

word "hearing" properly denotes also a hearing on the question of law as to the sufficiency of the allegations made by a complainant. In this sense of the word the generalization invalidly asserts that such a question can be decided without a hearing, *i. e.*, without allowing the complainant an opportunity to argue to the tribunal to which his complaint is presented that the allegations of the complaint, assuming their truth, are as a matter of law sufficient. The assertion is invalid because the due process clause guarantee of hearing extends, as demonstrated above, to questions of law as well as to those of fact, and because the guarantee of hearing, as also demonstrated above, is not conditional upon the *ex parte* view of the tribunal as to whether there is a substantial question as to the sufficiency of the allegations of a complainant.

WJR as an outstanding licensee is not a mere permissive intervener or, as the minority puts it, an "outsider." Under Section 312(b) of the Communications Act and the ruling of the Supreme Court in the KOA case, if the license of WJR as an outstanding station will suffer indirect modification by the operation of the applicant station, Coastal Plains, WJR is entitled to a hearing on the question whether or not such modification is required by the public interest; and under the ruling of this court in the Wilson case it is entitled first to a hearing on the issue modification *vel non* itself and therefore, as above explained, at the threshold to a hearing on the question raised, as if on demurrer, whether or not the allegations of its petition for reconsideration show that there will be an indirect modification of its license by the operation of Coastal Plains.

It is not, as asserted in the minority opinion, the contention of the majority that the Constitution requires oral argument in order that a pleader may have a chance to persuade the tribunal that he has an interest "despite" his allegations. On the contrary, the position of the majority is, as above stated, that every person who claims injury or threat of injury has a right to contend before an appropriate tribunal that "within" the allegations of his claim, assuming their truth, he states a "cause of action" cognizable under the rules, principles, concepts or standards of law which the tribunal is empowered to apply.

We conclude that under the due process clause of the Fifth Amendment WJR is entitled to a hearing before the Commission as to the sufficiency of the allegations of its petition for reconsideration, assuming their truth, to show indirect modification of its license by the granting of the Coastal Plains application.

### III.

It is, however, contended by the Commission that even if it erred in denying to WJR an opportunity to be heard on the question whether or not the allegations of its petition for reconsideration, assuming their truth, "showed" objectionable interference to WJR within its lawfully protected contour by the operation of Coastal Plains, and consequent indirect modification of WJR's license, nevertheless the decision reached by the Commission as to the sufficiency of the allegations of WJR's petition was correct and that this court can so determine. This contention of the Commission is not supportable—this court cannot now so determine. The contention that it can omits to recognize the distinction between questions of correct procedural action and questions of correct decision on the merits.

Whether the Commission was under a duty to accord a hearing, *i. e.*, to hear argument before deciding whether the allegations of WJR's petition were sufficient is a procedural question quite separate from the question on the merits whether or not the allegations of the petition, assuming their truth, were sufficient. If it was the duty of the Commission to accord the hearing, to hear argument, on the question of the sufficiency of the allegations of the petition before deciding as to their sufficiency, then the question of the correctness of its decision as to their sufficiency is not properly before this court. The Commission's decision has not been validly reached and until it has been validly reached it is not properly reviewable. As this court ruled in the Wilson case, the stat-

utory scheme set up in the Communications Act contemplates, before review in this court, proper exercise of the Commission's primary jurisdiction, *i. e.,* valid first instance hearings properly conducted from the procedural—due process—standpoint. The court, in the view of the majority, must therefore remand the case with directions to the Commission to allow a hearing to WJR. Then if after hearing the Commission decides that the allegations were insufficient and dismisses the petition (*i. e.,* allows the grant of the Coastal Plains application to stand) an appeal to this court will bring properly before us the question of the correctness of the Commission's decision on the merits as to the sufficiency of the allegations to show indirect modification of the license of WJR as an outstanding station by the operation of Coastal Plains.

For the court to hold that the Commission was under a procedural duty to hear argument on the merits before deciding on the merits, but nevertheless to review the Commission's decision on the merits and either affirm or reverse it, would be for the court to condone the denial of hearing, the refusal to hear argument. Denial of a procedural right guaranteed by the Constitution—in this instance denial of a hearing guaranteed by the due process clause—is never "harmless error."

An example of this may be supplied from criminal proceedings. Suppose that a verdict of guilt of murder and a sentence imposed under such verdict were appealed on a record which included the evidence, exhibits, arguments to the jury, and instructions, that is to say, all items conventionally necessary for review on the merits. But suppose that the contention of the appellant is that he was excluded from the courtroom during the trial, and that this was a denial of a procedural right guaranteed by the Constitution. Suppose that the Government conceded that the appellant was excluded from the courtroom during the trial but contended first that the Constitution did not require his presence (just as the Commission contends here that the Constitution does not guarantee a hearing) and second that, in any event, the verdict of guilt was correct under the evidence and the instructions. If the court decided that the exclusion of the appellant from the courtroom was a procedural error, a violation of a constitutional guarantee (this of course the court would be obliged to decide), the court would decline to consider the question of the correctness of the verdict under the evidence and the charge and would remand the case for a new trial with directions that the appellant should be allowed to remain in the courtroom during the trial. No matter how clear it might appear under the evidence that the appellant was "guilty" the court would be obliged to hold the verdict and sentence vitiated by the exclusion of the appellant from the courtroom. The court would recognize that there can be no validly "correct" verdict, no valid "guilt," until there has been a trial conducted in accordance with fundamental procedural guarantees. By parity of reasoning: In the instant case, since the due process clause does guarantee to WJR a right to make argument to the Commission in support of the sufficiency of the allegations of its petition for reconsideration before the Commission decides the question of their sufficiency, then since the Commission denied that right of argument this court must decline to consider the question of the "correctness" of its decision as to the sufficiency of the allegations until the Commission on remand has accorded WJR the right to make argument, and thereafter has reached a decision as to the sufficiency of the allegations. Only then will there be a valid first instance decision by the Commission which can properly be reviewed on the merits in this court. The court must recognize that there can be no valid "insufficiency of allegations" until there has been a decision as to their sufficiency reached in a manner consistent with fundamental procedural guarantees. There can be no "correct" decision on the merits which the court can review until a decision has been properly reached in view of the procedural guarantee of hearing.

The foregoing is epitomized in the Wilson case in the concluding aphorism: "He who decides anything, one party being unheard, though he should decide right, does wrong." [83 U.S.App.D.C. at 190, 170 F.2d at 807.]

The Commission contends further that even if it did commit procedural error in denying hearing the case need not be remanded for hearing; that a hearing can be afforded in this court on the sufficiency of the allegations of WJR's petition. This contention is not supportable. It again ignores that the statutory scheme contemplates a procedurally valid first instance hearing in the administrative tribunal before review. As this court said in the Wilson case:

The contention of the Commission that it could properly decide the issue before it without a hearing, leaving any hearing to an appeal, ignores the respective positions and functions of the Commission and this court in the statutory scheme for administration of the Act. It is true that this court has power under Section 402 (e) to rule on questions of law. But . . . its rulings are in review, not in the first instance. The Commission is first, in the exercise of its primary jurisdiction, to apply its expertise and make a "full statement in writing of the facts and grounds for its decision as found and given by it . . .." (Section 402 (e) ) Administrative tribunals must, in the nature of their functioning, make decisions on questions of law in the first instance. They cannot reach decisions without applying to the facts they find the law governing their action; and to apply the law they must first determine what it is. Cf. United States v. Louisville & N. R. R., 1914, 235 U.S. 314, 320, 321, 35 S.Ct. 113, 59 L.Ed. 245; Rochester Telephone Corporation v. United States, 1939, 307 U.S. 125, 136, 59 S.Ct. 754, 83 L.Ed. 1147; 1 Vom Baur, Federal Administrative Law § 73 (1942). Nothing in the. Communications Act or in any judicial construction thereof of which we are aware indicates that it was the intention of Congress that the Commission should exercise its primary jurisdiction on questions of fact only, and not on mixed questions of fact and law or questions of law alone. We think the Act, rightly viewed, contemplates hearings by the Commission in the first instance on all such questions. [83 U.S.App.D.C. at 188-9, 170 F.2d at 805-6]

## 1V.

It is contended by the Commission that WJR did not in the instant case in its petition for reconsideration request a hearing on the question whether or not its petition alleged facts which if true "show" that it will suffer objectionable interference within its protected contour by the operation of the Coastal Plains station and that this forecloses WJR's right to such a hearing. It is true that the prayer does not specifically request such a hearing. The prayer is: "Wherefore, the petitioner requests the Commission to reconsider its action of August 22, 1946, and to designate the Tarboro Broadcasting Company [Coastal Plains] application for hearing or, in the alternative, to hold in abeyance its grant of such application until after a decision in the Clear Channel case." But if WJR's request for hearing is too broad, i. e., if, as the Commission appears to contend, WJR is asking for an immediate hearing on the question whether public interest requires operation of the Coastal Plains station at the cost of indirect modification of WJR's license before determination of the question whether or not the allegations of WJR's petition, assuming their truth, "show" indirect modification of WJR's license, the Commission is at liberty, as this court ruled in the Wilson case, to hold a hearing first on the issue modification vel non, and at the threshold of consideration of that issue to treat WJR's petition as if on demurrer. In view of the broad powers of the Commission for orderly procedure, including its power to deal with WJR's petition for reconsideration first as if on demurrer, it ought not decline to do so upon the ground that the prayer of the petition was phrased too broadly; it ought not on such ground deny WJR a hearing on the very question which it, the Commission, actually ruled on and decided in the negative ex parte, to wit, the question whether or not the allegations of the petition, assuming their truth, showed that WJR's license would be indirectly modified by the operation of the Coastal Plains station. It would be technical indeed for the Commission to refuse a hearing on that question merely upon the ground that the prayer of the petition improperly requested a broader hearing. It is not contemplated by the Communications Act—especially in view of the liberal procedure permitted there-

under—that the Commission shall deal so strictly with litigants before it. Not even a court would be justified in taking so technical a position as this.

The decision of the Commission of August 22, 1946, granting without hearing the application of the Coastal Plains Broadcasting Company, Inc., for a construction permit to erect a new standard broadcast station and the decision and order of the Commission of December 17, 1946, denying without hearing the appellant's petition for reconsideration of the Commission's decision of August 22, 1946, are reversed and the case is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

PRETTYMAN, Associate Justice, with whom EDGERTON, Associate Justice, concurs (dissenting):

The opinion of the court states our difference of view. The ruling is that a petitioner for intervention in an administrative proceeding is entitled to an oral hearing as a matter of constitutional right, no matter what or how little he says in his petition. It is my view that a petition for intervention can be denied without a hearing, if the petitioner does not allege any fact which indicates a threatened damage to, or modification of, some existing right of his, or a fact which at least presents a substantial question in that regard.

Perhaps some preliminary observations will serve to clarify the issue. The opinion of the court describes WJR's petition to the Commission as one for reconsideration of the decision in the Coastal Plains case. That is true; it was. But it was basically a petition to intervene, as it asked that WJR be made a party to the Coastal Plains proceeding.[1] And that intervention was a necessary prerequisite

to those portions of the petition which prayed for the hearing on the Coastal Plains application. What we are really considering is the petition to intervene. The question is: Does the Constitution require that WJR have an oral hearing upon its prayer to be made a party to the Coastal Plains case? In its present opinion, the court declines to consider that portion of the petition which prays for reconsideration of the Commission's decision granting the Coastal Plains application.

The opinion discusses the right of access to the Commission. As I see it, that is not involved. WJR had such access. It filed its petition—in such form as it wished and with a supporting affidavit— and the petition was considered and disposed of by a long opinion. The point in controversy here is whether that right of access necessarily includes an oral hearing.

The court says that a petitioner is entitled to hearing upon questions of law. I do not dispute that proposition. But I say that a question of law must be presented before there need be a hearing upon it, and that questions of law are presented only upon allegations of fact. Such questions do not exist in vacuo in judicial or quasi-judicial proceedings. The mere assertion of an abstract proposition of law does not constitute a justiciable issue. The key to the present controversy is whether facts must be alleged in sufficient quality and quantity to present a question of law.

The court says that if no oral hearing be had upon a petition to intervene, the petitioner is "disabled to proceed further" and thus is left to the premise of infallibility on the part of the Commission. I do not agree with that view. Such a petitioner has an appeal just as if he had had a hearing, and if his allegations of fact are sufficient, in the view of the

1 Technically, under the Rules and Regulations of the Federal Communications Commission, Part 1, relating to organization and practice and procedure, this appellant's petition was for rehearing under § 1.390, rather than to intervene under § 1.388. But in effect it was a petition to intervene. The status of such a station was held to be that of an intervenor in Federal Communications Comm'n. v. National Broadcasting Co., 1943, 319 U.S. 239, 63 S.Ct. 1035, 87 L. Ed. 1374.

appellate court, to present a question as to his rights, the court will so hold. If the reply to this view be that the Constitution does not guarantee an appeal, then I say that the Constitution leaves petitioners to the peril of fallibility of the Commission, hearing or no hearing. Moreover, the Commission is an executive agency, and its actions must under the Constitution be subject to judicial scrutiny for constitutional validity.

One more preliminary observation should be made. We are not discussing the desirability of a hearing. We are concerned only with whether a hearing was required. Courts are without power to require a hearing in an administrative proceeding unless a hearing is required by the Constitution, a statute, a valid administrative regulation, or a binding contractual agreement. No matter how desirable a hearing may be in the premises, or how greatly a hearing might facilitate sound disposition of a controversy, the courts cannot compel it, unless there be some requirement for it other than the court's own view. The courts cannot require an administrative agency to do that which is merely patently desirable. They can require only that the agency comply with the Constitution, the statutes, and its legal obligations.

Because the question principally at issue is of such vast practical importance in both administrative and judicial proceedings, I state my view upon it at somewhat greater length than might otherwise be justified.

Appellant's station, WJR, is a Class I-A "clear channel" station. Its rights are only those contained in its license. The statute itself is explicit in providing that no license "shall be construed to create any right, beyond the terms, conditions, and periods of the license." The Supreme Court has given effect to rights of an existing licensee in respect to changes, whether nominal or actual, in the terms of its license,[2] but the Court has not suggested that the rights of a licensee are greater than the terms of his license.

The status and rights of a Class I-A clear channel station are described and defined in the Commission's Rules and Regulations and in its "Standards of Good Engineering Practice".[3] Its nighttime rights and its daytime rights are wholly different. At nighttime a Class I-A clear channel station is given absolute protection; that is, no other station is permitted to broadcast on its frequency at night. But the Rules are just as clear that in the daytime other stations can be assigned to that frequency.[4] The rights of a Class I-A station in daytime are defined with precision: " * * * during daytime the Class I station is protected to the 100 uv/m ground wave contour."[5] The area thus defined is called the normally protected contour or area.

This concept of normal protection in the daytime is clear. The circumference of the protected area is a contour line, which is fixed by measurement of the strength of the radio waves from the particular station. That strength, or intensity, is measured in terms of microvolts (millionths of a volt) or millivolts (thousandths of a volt) per meter, abbreviated as uv/m and mv/m, respectively. The wave which is measured is the groundwave, which follows the surface of the earth and extends greater or less distances depending upon the nature of the earth, its topography, and such obstacles as noise and steel structures. Generally speaking, the greater the distance from the station, the less the strength of the station signal. The "100 uv/m ground wave contour" named in the Commission's Standards, is the imaginary line which connects all points at which

---

[2] Federal Communications Comm'n v. National Broadcasting Co., supra note 1.

[3] Standards of Good Engineering Practice concerning Standard Broadcast Stations, revised to June 1, 1944 (hereinafter referred to as "Standards"). These contain detailed statements relative to broadcasting standards and are auxiliary to the Commission's Rules. Some portions of the Rules expressly refer to the Standards and, seemingly, they are accorded the force and effect of the main body of the Rules, to that extent at least. The parties before us are in agreement in so treating them.

[4] Standards, pp. 1, 2.

[5] Ibid.

the groundwave of the station is of 100 microvolts per meter strength. The area within that irregular circumference is the normally protected area.

The Standards also prescribe conditions under which a station may have protection outside and beyond the area which is normally protected. They provide that when it is shown that "primary service" is rendered by a station beyond the normally protected contour, and that primary service to approximately 90 per cent of the population in that area is not supplied by another station, "the contour to which protection may be afforded in such cases will be determined from the individual merits of the case under consideration."[6] Thus, every station has normal protection, and those which comply with the prescribed requirements may secure such additional protection as the individual merits of their cases justify. Obviously, this additional protection would be upon specific application, showing, finding and award.

WJR had normal protection and no more. Its license contained no special provision as to protection. It does not allege that it ever applied to the Commission for additional protection based upon the individual merits of its case, as provided in the permissive sections of the Standards. The daytime protection afforded by its license was to its 100 uv/m groundwave contour, and no further.

In its petition to the Commission, WJR said that its present interference-free service area would be subjected to objectionable interference by the Coastal Plains station, and referred to an attached engineer's affidavit for details. The engineer recited that he had made calculations of the relative field intensities of the two stations, and assumed that interference would be objectionable when the field intensity of the Coastal Plains station, exceeded 10 per cent of the time, was 5 per cent or more of the average measured field intensity, of WJR, which

calculations are in accord with the Commission's standards. These calculations showed, the engineer stated, that the service of WJR would be so interfered with between 10 A.M. and 2 P.M. in an area in which the field intensity of that station averages 32 microvolts per meter or less during daytime hours. Thus WJR did not allege to the Commission that the Coastal Plains operation would cause daytime interference with its signals or service within its 100 uv/m groundwave contour. Its engineer's affidavit was quite explicit that the interference from Coastal Plains would occur in areas where WJR's average signal strength was only 32 uv/m, which is well outside the 100 uv/m contour. So the facts alleged in the petition for intervention and hearing, as presented to the Commission, taken as fully true, do not show any threatened interference in the only area in which WJR is protected.

WJR also alleged in its petition to the Commission that "The substantial number of listeners now depending upon WJR service in this area will be deprived of such service through the operation of the proposed Tarboro [Coastal Plains] station." The engineer's affidavit contained no such statement and no factual basis for it. The extreme of the engineer's conclusions was that the Coastal Plains signal would exceed 5 per cent of the WJR signal in the described area for more than 10 per cent of the time. The petition does not allege any facts which indicate a threat to any of WJR's present property or license rights.

As I have said, it is my view that a person has not established his right to a hearing under the Fifth Amendment, under the Communications Act, or under the Commission's Rules and Regulations, until he has alleged some fact which indicates a threatened damage to, or modification of, some existing right of his; or facts which at least present a substantial question in that regard.[7] If a person has a right of protection within a 100

---

[6] Id., p. 4.

[7] Some phases of this problem are discussed in the several opinions in National Broadcasting Co. v. Federal Communications Comm'n, 1942, 76 U.S.App.D.C.

238, 132 F.2d 545, affirmed 1943, 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374. In that case it was undisputed that the new operation by WHDH would cause objectionable interference to KOA's service in vio-

uv/m contour, and he alleges that a contemplated new operation will interfere with him at his 32 uv/m contour, he has not alleged that he would be deprived of property by the new operation, or that his license would be modified by it. He has not alleged, factually, that he is entitled to be heard upon the newcomer's application.

I think that the applicable rule is stated in Beaumont, S. L. & W. R. Co. v. United States,[8] where the Supreme Court said:

"Appellants claim that the Commission's order, if enforced, will operate to deprive them of their property without due process of law in violation of the Fifth Amendment to the Constitution.

"It is well-established by the decisions of this court that, in order to invoke such constitutional protection, the facts relied upon to prevent enforcement of rates prescribed by governmental authority must be specifically alleged and from them it must clearly appear that the enforcement of the measure complained of will necessarily deny to the utility the just compensation safeguarded to it by the Constitution."[9]

The due process of law protective provision of the Constitution, like any other man-made law, must be invoked by an allegation of facts. In our jurisprudence a plaintiff must state a factual cause of action. Even the new Federal Rules of Civil Procedure, 28 U.S.C.A., require that the statement of the claim must show that the pleader is entitled to relief.[10] Neither a blank sheet of paper nor a mere naked assertion of a legal proposition depicts a legal right in a certain person in a certain case or presents a justiciable controversy. Not every assertion, by a pleader, of lack of due process poses a constitutional question.[11]

Parenthetically I note that an oral argument upon its prayer for intervention is not the hearing which WJR requests. It did not ask, and does not now ask,[12] that its prayer to be made a party be set down for argument before the Commission. Its request is that the Coastal Plains application be set down for hearing. The court is not proposing to grant that request, or even to act upon it.

We have no difference of opinion upon the proposition that if the facts as alleged clearly show that the person making the allegations has an interest in the proceeding (i. e., that a legal right of his is involved), he cannot be denied participa-

---

lation of its license, since the new operation was to be at night, when KOA, as a Class I station, was fully protected. KOA so alleged in its petition to intervene.

[8] 1930, 282 U.S. 74, 88, 51 S.Ct. 1, 75 L.Ed. 221.

[9] See also Denver Union Stock Yard Co. v. United States, 1938, 304 U.S. 470, 484, 485, 58 S.Ct. 990, 82 L.Ed. 1469; Missouri Pacific R. Co. v. Norwood, 1931, 283 U.S. 249, 254, 255, 51 S.Ct. 458, 75 L.Ed. 1010; Aetna Insurance Co. v. Hyde, 1928, 275 U.S. 440, 446, 447, 48 S.Ct. 174, 72 L.Ed. 357; Lampasas v. Bell, 1901, 180 U.S. 276, 283, 21 S.Ct. 368, 45 L.Ed. 527, 530; Western Union Telegraph Co. v. Ann Arbor R. Co., 1900, 178 U.S. 239, 243, 244, 20 S.Ct. 867, 44 L.Ed. 1052, 1054; Gold Washing & Water Co. v. Keyes, 1878, 96 U.S. 199, 203, 24 L.Ed. 656, 658, 659. Cf. Clark v. Kansas City, 1900, 176 U.S. 114, 118, 20 S.Ct. 284, 44 L.Ed. 392, 397: "Not a law alone, but a law and its incidence, are necessary to a justiciable right or injury; * * *."

[10] Fed.R.Civ.P. 8(a).

[11] One not affected may not raise a constitutional question. Tennessee Electric Power Co. v. T. V. A., 1939, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543; Chicago Board of Trade v. Olsen, 1923, 262 U.S. 1, 42, 43 S.Ct. 470, 67 L.Ed. 839; and many other cases to the point collected in the digests, treatises and restatements. As to speculative inquiries in hypothetical controversies, see Electric Bond Co. v. Securities and Exchange Comm'n., 1938, 303 U.S. 419, 443, 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105; Bourjois, Inc. v. Chapman, 1937, 301 U.S. 183, 188, 57 S.Ct. 691, 81 L.Ed. 1027; Massachusetts v. Mellon, 1923, 262 U.S. 447, 484, 488, 43 S.Ct. 597, 67 L.Ed. 1078.

[12] Appellant "prays an order reversing said decisions [the original grant of the Coastal Plains application on August 22, 1946; the grant of a modified Coastal Plains application on October 14, 1946; and the denial of appellant's petition on December 17, 1946] of the Federal Communications Commission and for such further relief as this court may deem just and proper."

tion in the proceeding without an opportunity to prove the facts; if he proves his facts, he is entitled to participate in the proceeding from then on. And we agree that if, upon the acts as alleged, a real and substantial question of law arises as to whether he has an interest in the matter, due process of law requires that he be heard on the question of law. A real and substantial threat of injury is sufficient to invoke the protective clause.

Of course, the difference between what is and what is not a substantial question of law is often difficult to decide. But our practice has many instances in which it must be decided. Rule 61 of the Federal Rules of Civil Procedure and Rule 52(a) of the Federal Rules of Criminal Procedure, dealing with error not affecting "substantial rights", are two. Rule 46(a) of the Criminal Rules, 18 U.S.C.A., dealing with bail pending appeal when "a substantial question" is presented, is another. What is "substantial evidence" is still another. Perhaps the necessity for a "substantial" federal constitutional question as a prerequisite to the convening of a three-judge court [13] is the most vivid illustration.

The court relies upon an analogy to a demurrer, and extends its ruling to cover motions to dismiss, which are the new substitutes for demurrers. I doubt that the analogy is complete, this being a petition to intervene in an administrative proceeding; but, apart from that consideration, I do not believe that the Constitution unequivocally and in all events requires a hearing upon a demurrer. It is my view that if a complaint fails to allege facts which even pose a substantial question whether the complainant is entitled to relief, the court can dismiss it without hearing. The Rules of Civil Procedure, having abolished demurrers and substituted therefor motions, provide: [14] "To expedite its business, the court may make provision by rule or order for the submission and deter-

mination of motions without oral hearing upon brief written statements of reasons in support and opposition." The ruling of the court in this case would make that rule invalid when applied to motions to dismiss. I do not think it is invalid.

Moreover, the local rules of court in this jurisdiction provide for an oral argument of ten minutes on motions. [15] If that oral argument were designed to fulfill constitutional requirements, it could not be limited to ten minutes. A rule designed to meet constitutional requirements, and effective to that purpose, would have to be phrased in terms of adequacy of presentation. In my view, the local ten-minute rule on motions is a rule of court convenience and has no basis in constitutional necessities.

The decision of the court that the Constitution requires an oral hearing on all petitions for intervention would cause extensive revision of the rules of administrative agencies. I have examined many of those rules and find no indication of any thought that such petitions must necessarily be set for oral hearing. The fact that they make no such provision is, of course, unimportant if they are constitutionally inaccurate in that respect. But it is an interesting circumstance that the requirement is not generally, if at all, recognized. All those rules will have to be revised under the opinion and decision of the court in the present case.

The foregoing observations in respect to the Fifth Amendment apply also to the contention that the Communications Act requires that WJR be given a hearing. The Act [16] requires a hearing before an existing license can be modified, a licensed facility changed, or an application for modification of a license denied. A license is not being modified unless one of its terms is being changed, encroached upon or threatened in some way. If none of the rights conferred by the license is be-

---

[13] Act of Aug. 24, 1937, 50 Stat. 752, 28 U.S.C.A. § 380a. California Water Service Co. v. Redding, 1938, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323; Jameson & Co. v. Morgenthau, 1939, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189.

[14] Fed.R.Civ.P. 78.

[15] Rule 9(b) of the Rules of the District Court of the United States for the District of Columbia.

[16] Secs. 312(b), 303(f), 309(a).

ing impinged upon, I find no statutory right to a hearing.

The point upon which we differ is elusive and difficult to pin down, but it is exceedingly simple. Perhaps if we visualize a proceeding we will make it clear. A case to which A and B are parties is pending before some tribunal. An outsider, M, appears and files a paper in which he asks to be made a party.[17] But he does not allege any fact which shows that he has any interest in the case, or that he would be affected by it, or even raises any substantial question in that respect. My view is that such an unsupported request can be denied without an oral argument. The court says that the Constitution requires that he have oral argument, in order that he may have a chance to persuade the tribunal that he has an interest despite his allegations. In its practical effect, the court requires that every petition for intervention be set for oral hearing, no matter what the petition says or fails to say. I say that tribunals have some measure of leeway to dispose of such petitions without hearing, if they do not even raise a substantial question as to the petitioner's interest. In its theoretical concept, the court seems to hold that the Constitution protects all pleaders against stupidity, laziness or ineptness with the written word. My view is that the Constitution requires him who wants to participate in a pending case to exert at least a modicum of effort and to indicate in writing at least some shadow of factual ground for his prayer.

The court does not reach the merits of WJR's petition. It is my view that it should proceed to consider whether the Commission was right or wrong in denying the intervention. The error, if there was any, on the part of the Commission was in holding that WJR was not entitled to participate in the proceeding. The error was not, in my view, in merely so deciding upon the written petition without oral argument.

---

[17] The court says that WJR was not an "outsider" to this proceeding. Certainly it was not a party, and it certainly had no right to be a party unless its license rights were threatened. Absent such threat, it was as much an outsider to the proceeding as if it had no broadcasting license. It seems to me that the Supreme Court was quite meticulous in making this clear by its discussion of the converse situation in the National Broadcasting Co. case, supra note 1.