WJR, THE GOODWILL STATION, Inc. v. FEDERAL COMMUNICATIONS COMMISSION (WEBB et al., Interveners).

No. 9495.

United States Court of Appeals
District of Columbia Circuit

Argued June 12, 1947

Decided Oct. 7, 1948

Mr. Kelley E. Griffith, with whom Messrs. Louis G. Caldwell, Reed T. Rollo, and Percy H. Russell, Jr., were on the brief, for appellant.

Mr. Max Goldman, Attorney, Federal Communications Commission, with whom Messrs. Benedict P. Cottone, General Counsel, Harry M. Plotkin, Assistant General Counsel, and Paul Dobin, Attorney, who entered appearances, and Mr. Joseph M. Kittner, Attorney, Federal Communications Commission, were on the brief, for appellee.

Mr. Eugene L. Burke, with whom Mr. John C. Hayes, who entered an appearance, was on the brief, for intervener.

Mr. Robert T. Barton, Jr., who was permitted to argue as amicus curiae, urged affirmance.

Before STEPHENS, EDGERTON, CLARK, WILBUR K. MILLER, and PRETTYMAN, Associate Justices.

STEPHENS, Associate Justice:

This is an appeal from a decision of the Federal Communications Commission announced December 5, 1946 (and reaffirmed by decision dated February 20, 1947, denying the appellant's petition for reconsideration) granting without hearing an application of Hugh I. Webb, J. Kelley Robinson and J. S. Robinson, doing business as Southeastern Broadcasting Company, hereafter referred to as Southeastern, for a construction permit for a new standard radio broadcasting station.

The record shows that: The appellant is the licensee of radio broadcasting station WJR at Detroit, Michigan. Its license, which has been outstanding since prior to June 13, 1936, authorizes operation of WJR as a Class I-A clear channel station with a power of 50 kilowatts unlimited time on a frequency of 760 kilocycles, and with a non-directional antenna. On June 13, 1936, the appellant filed with the Commission an application to increase its power from 50 to 500 kilowatts. This application was dismissed without prejudice by the Commission on June 16, 1942, pursuant to a wartime policy of the Commission against granting applications requiring the use of additional materials. On February 20, 1945, the Commission by order initiated a rule-making proceeding, called the Clear Channel Hearing, to which the appellant is a party. Several of the issues in that proceeding relate to the permissive power and service area of clear channel stations. Hearings in that proceeding have been commenced but have not been concluded. On February 5, 1946, the Commission by a public notice announced a policy to the effect that applications requesting power in excess of 50 kilowatts could not be filed until the conclusion of the Clear Channel Hearing and the subsequent modification, if any, of the Commission's Rules and Regulations (hereafter referred to as rules). On June 21, 1946, although the hearings in the Clear Channel Hearing had not been concluded, the Commission announced that it would "consider on their individual merits applications involving use of 1-A channels, daytime or limited time, where the proposed station is 750 miles or less from the dominant 1-A station using a non-directional antenna on the frequency requested . . . ." [1]

On October 23, 1946, Southeastern filed its application (amending a pending application) for a construction permit to erect a new standard broadcasting station to operate on 760 kilocycles—the same frequency used by the appellant—with 500 watts power, daytime only, at Clanton, Alabama, a location about 700 air line miles from Detroit where, as said above, the appellant's station is located. On December 5, 1946,

---

[1] On October 8, 1946, Clear Channel Group, an organization of clear channel station licensees of which the appellant is a member, filed with the Commission a general petition for reconsideration of the announced policy of June 21, 1946, asserting that grants made under such policy would make more difficult the decision of the pending issues in the Clear Channel Hearing. On January 2, 1947, the Commission denied this petition.

the Commission, without a hearing, granted the application of Southeastern.

On December 26, 1946, the appellant filed with the Commission a petition for reconsideration of the grant of the Southeastern application. The petition alleged that WJR as a Class I-A station, was, under the Commission's rules and under its Standards of Good Engineering Practice (hereafter referred to as standards), entitled to protection from interference by Class II daytime stations to its 100 uv/m (microvolts per meter) contour; that the operation of the proposed Southeastern station would cause substantial interference to the interference-free service of station WJR extending well within its 100 uv/m contour, and that such interference would adversely affect the interests of the appellant and the public and would thereby in effect result in a modification of the appellant's license. To the appellant's petition was attached an engineering affidavit which stated that upon the basis of measurements studied the operation of the Southeastern station would cause interference at and within the 100 uv/m contour of WJR; in addition, that interference would be caused to the intermittent service furnished by WJR in northern Michigan with a signal of less than 100 uv/m; that this service was furnished in a low noise level area where the service of WJR was the best available and where, according to the Commission's own exhibit in the Clear Channel Hearing, WJR is the most listened to of all broadcasting stations. The appellant's petition prayed that the Southeastern application be designated for hearing "to determine the extent of mutual interference that will result between station WJR and the station proposed in the application," and requested that the appellant be made a party to the hearing. The petition prayed, alternatively, that the Southeastern application be placed "in the pending files until a decision is rendered in the Clear Channel Hearing, Docket No. 6741."

On January 3, 1947, Southeastern filed an opposition to the appellant's petition for reconsideration. This opposition asserted that the prayer of the appellant that the Commission designate Southeastern's application for hearing was not supported by the showing required by the Commission's rules, and that the alternative prayer that the Southeastern application be placed in the pending file until a decision in the Clear Channel Hearing had been rendered sought action contrary to established procedure. More specifically, the opposition asserted that the appellant's station WJR, as a Class I station, was afforded protection by the Commission's rules and standards to its 100 uv/m ground wave contour during daytime; that in the absence of interference caused within the normally protected contour the appellant had no right to be heard; that the appellant did not allege, and that Southeastern denied, that the operation of the proposed station by Southeastern would cause any ground wave interference from which the appellant's station is protected during its daytime operation by the Commission's rules and standards; that appellant had not shown that either its own interest or that of the public would be adversely affected by the operation of the Southeastern station; that the appellant, having failed to show in its petition for reconsideration that the Southeastern station would cause any ground wave interference against which the appellant's station is protected during daytime operation by the Commission's rules and standards, had failed to show that the operation of the Southeastern station would in effect result in modification of the appellant's license. A supporting engineering affidavit was attached to the opposition.

On February 20, 1947, in a "Memorandum Opinion and Order," the Commission denied the appellant's petition for reconsideration, thereby affirming its decision of December 5, 1946, granting without hearing the Southeastern application. The Commission rested its decision upon another memorandum opinion and order of the same date denying a petition for reconsideration filed by the Courier-Journal and Louisville Times Company, Inc., directed against the grant without hearing of an application of Oklahoma Agricultural and Mechanical College, Stillwater, Oklahoma, for a construction permit to erect a broadcasting station; and that memorandum

opinion and order the Commission founded upon a decision of November 14, 1946, denying a petition of station WCKY for reconsideration of the grant without hearing of an application of Patrick Joseph Stanton for a construction permit to erect a broadcasting station.[2] The grounds of the Commission's decision as thus evidenced were that its "Rules relating to protection of daytime contours of clear channel stations do not take cognizance of, nor afford protection against, skywave interference; that such waves are not reflected effectively back to earth during the day; that the periods of diurnal change are very uncertain and erratic in their effect on radio wave propagation; that on some days in the periods immediately before sunrise and sunset, skywaves may be reflected into areas which on other days and in the same periods of time receive no such signal; and that in this state of the radio art, it is virtually impossible, and the Commission believes it would be unreasonable, to define 'daytime' operation in terms as unstable, erratic and uncertain as the conditions of radio wave propagation at sunrise and sunset." In view of this the Commission ruled that the daytime interference of which the appellant complained affected no interest of the appellant in respect of which it was entitled to protection. It ruled also that there was no showing in the appellant's petition that the grant to Southeastern was contrary to the public interest. The Commission thus ruled in effect that the appellant was not entitled to a hearing upon the Southeastern application. It ruled in effect also against the appellant upon the alternative prayer that the Southeastern application be placed in the pending files until a decision is rendered in the Clear Channel Hearing. On February 28, 1947, this appeal was filed.

[1] As to the right of the appellant to a hearing upon the Southeastern application: The allegations of the appellant's petition and the assertions in the Southeastern opposition thereto amply advise the Commission, in view of its liberalized procedure, of the existence of an issue between the appellant and Southeastern as to whether objectionable interference within the protected contour of the appellant's station will be caused by the operation of the Southeastern station, an issue, that is, of modification *vel non* of the appellant's license. Within the rulings made and the principles announced in L. B. Wilson, Inc. v. Federal Communications Commission, 1948, 83 U.S.App.D.C. 176, 170 F.2d 793, and WJR, The Goodwill Station, Inc. v. Federal Communications Commission, No. 9464, 1948, —— U.S.App.D.C. ——, 174 F.2d 226, the appellant is entitled to a hearing upon that issue, the Commission being at liberty, as pointed out in those cases, at the threshold of consideration of that issue to treat the appellant's petition as if upon demurrer.

As to the appellant's alternative prayer: For the reasons pointed out in topic I of the opinion in WJR, The Goodwill Station, Inc. v. Federal Communications Commission, No. 9464, 1948, —— U.S.App.D.C. ——, 174 F.2d 226, the action of the Commission denying the appellant's alternative prayer cannot be disturbed.

Reversed and remanded for further proceedings.

PRETTYMAN. Associate Justice, with whom EDGERTON, Associate Justice, concurs (concurring):

I concur in this opinion and decision. I make this separate statement in order to emphasize that this case, with No. 9434, L. B. Wilson, Inc. v. Federal Communications Comm'n, 83 U.S.App.D.C. 176, 170 F.2d 793, and No. 9464, WJR, The Goodwill Station, Inc. v. Federal Communications Comm'n, —— U.S.App.D.C. ——, 174 F.2d 226, together present all phases of the problem upon which the court differs in opinion. In the present case, the petitioner alleged that the proposed new station would cause substantial interference "well within its 100 uv/m contour"; the supporting

---

[2] The Commission's decision of November 14, 1946, is dealt with in L. B. Wilson, Inc. v. Federal Communications Commission, 1948, 83 U.S.App.D.C. 176, 170 F.2d 793. We refer to that case in the text, infra.

engineer's affidavit asserted the same interference and, indeed, showed it at the 200 uv/m contour. The opposition to that petition asserted that the alleged interference would not be from groundwave, and that normal protection, under the Commission's Standards, is against groundwave only. Examination of the Standards shows that the question thus presented was indeed substantial. There is a serious and debatable question whether the Standards, and thus the licenses of all Class I clear channel stations, give protection against skywave in the daytime. Therefore, I agree that this appellant was entitled to a hearing before his petition was denied.