**HARBENITO BROADCASTING CO.,
Inc. et al.**

v.

**FEDERAL COMMUNICATIONS
COMMISSION.**

**L. B. WILSON, Inc.**

v.

**FEDERAL COMMUNICATIONS
COMMISSION.
Nos. 11984, 11985.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 8, 1954.

Decided July 29, 1954.

Petition for Rehearing Denied
Sept. 27, 1954.

Mr. W. Ervin James, Montgomery, Ala., with whom Mr. John Erle Stephen, Houston, Texas, was on the brief, for appellants in No. 11984.

Mr. Frank Roberson, Washington, D. C., for appellant in No. 11985.

Mr. John C. Spearman, Washington, D. C., entered an appearance for appellant in No. 11985.

Mr. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, Washington, D. C., with whom Mr. Warren E. Baker, Gen. Counsel, Federal Communications Commission, Washington, D. C., and Mr. Stanley S. Neustadt, Counsel, Federal Communications Commission, New York City, were on the brief, for appellee.

Mr. Frank Roberson, Washington, D. C., submitted on the brief for intervenor in No. 11984.

Mr. John C. Spearman, Washington, D. C., entered an appearance for intervenor in No. 11984.

Before WILBUR K. MILLER, PRETTYMAN and FAHY, Circuit Judges.

PRETTYMAN, Circuit Judge.

These are two appeals [1] from an order of the Federal Communications Commission.

Harbenito Broadcasting Company, Inc., is assignee of a construction permit granted one Hofheinz. Its station (KSOX) is at Harlingen, Texas. Hofheinz was granted a construction permit for a standard broadcast station. The dispute centers about daytime operation. Hofheinz's original permit authorized him to construct for daytime operation at 50 kilowatts power with directional antenna. Upon application the permit was modified to permit non-directional daytime operation. The station was constructed, and Hofheinz began program tests. He later applied for his license for regular operation.

L. B. Wilson, Inc., is the licensee of a station (WCKY) at Cincinnati, Ohio. It operates on the same frequency as does Hofheinz and at 50 kilowatts power non-directional. It claims that Hofheinz's operation under the modified grant (non-directional daytime) created objectionable interference within its (Wilson's) normally protected contour. Therefore, it says that the modification of Hofheinz's grant was a modification of Wilson's license.[2] It asserted its right to a hearing upon such modification.

Procedurally Wilson asserted its rights by filing a petition for reconsideration of the modification of Hofheinz's grant, requesting revocation of Hofheinz's program test authority, and a petition requesting that Hofheinz's application for license be set down for hearing. Hofheinz duly opposed all these moves. The Commission set all the pleadings down for oral argument, and oral argument before the full Commission was held.

Wilson's claim of objectionable interference within its normally protected contour was on account of alleged daytime skywave. At this frequency propagation of radio signals consists of groundwave and skywave. The groundwave is conducted over the earth's surface, depending upon the electrical conductivity characteristics of the particular soil. The skywave travels through the sky and is refracted back to earth

---

1. Sec. 402(b) of the Communications Act of 1934 as amended, 66 Stat. 718 (1952),

2. Federal Communications Comm. v. National Broadcasting Co., 1943, 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374.

by an imperfectly reflecting medium called the ionosphere. As is generally known, groundwave transmission is more restricted in its coverage but is of a steadier nature than skywave transmission. During daytime hours useful and reliable broadcast service is rendered solely by the groundwave signal. During the daytime skywave is spasmodic and generally of low intensity and is not relied on to render a broadcast service. Although a small portion of the signal may be refracted to earth, it dissipates almost entirely into the atmosphere. During nighttime, however, because of more extensive and reliable refraction, the skywave assumes relatively more reliable characteristics and greater intensity. Its existence during those hours has long been recognized by the industry and the Commission's rules and standards. These rules have for years afforded protection against nighttime skywave interference.

Wilson's problem arises out of the fact that there is not an abrupt change between the low daytime and high nighttime intensity of the skywave. There is a period of transition, which starts sometime before sunset and continues until sometime thereafter (approximately one hour and forty minutes), during which period skywave intensity gradually increases. A similar transition period of decrease occurs before and after sunrise. Wilson's complaint concerns skywave interference during these transition periods.

The Commission tells us that under the system of allocation now in effect it deliberately determined not to provide protection against daytime skywave; that is the precise point of conflict between the Commission and Wilson. But certainly it did not devise any special rules of protection for the periods of transition. And, however all that may be, recognizing the need for a re-evaluation of the problem, the Commission in 1947 adopted a Notice of Proposed Rule Making known as the Daytime Skywave case.[3] That proceeding is still pending before the Commission.

In the case at bar, after the oral argument, the Commission took several steps. It dismissed Wilson's protests and petitions, but it modified Hofheinz's program test authority so as to allow operation of the station with directional antenna daytime in conformity with the prior construction permit. This action eliminated the operation of the station upon non-directional antenna daytime. The Commission separated the Daytime Skywave case from the Clear Channel case and set it for immediate disposition. It deferred consideration of Harbenito's application for license pending the outcome of the Daytime Skywave case.

In respect to Wilson the Commission took the position that the terms of the license were set by existing rules and regulations, that those rules and regulations did not purport to provide protection against daytime skywave interference, and that therefore Wilson's protests and petitions rested upon a premise which was erroneous upon its face as a matter of law. These appeals followed. The Commission says that under the applicable cases [4] Wilson's protests and petitions could be rejected after oral argument upon the legal point and without an evidentiary hearing, by analogy as though upon demurrer or motion to dismiss. Wilson says that the case of L. B. Wilson, Inc. v. Federal Communications Comm.[5] is still the law and requires that it be afforded a full evidentiary hearing.

Hofheinz (i. e., Harbenito) says that the notice given by the Commission of the proposed oral argument contained

3. 12 Fed.Reg. 3359.

4. L. B. Wilson, Inc. v. Federal Communications Comm., 1948, 83 U.S.App.D.C. 176, 170 F.2d 793; WJR, The Goodwill Station v. Federal Communications Comm., 1948, 84 U.S.App.D.C. 1, 174 F.2d 226, reversed, 1949, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353, mandate followed, 1949, 85 U.S.App.D.C. 392, 178 F.2d 720; WJR, The Goodwill Station v. Federal Communications Comm., 1948, 84 U.S.App.D.C. 23, 174 F.2d 248.

5. 1948, 83 U.S.App.D.C. 176, 170 F.2d 793.

no intimation that his (Hofheinz's) construction permit might be modified or that that question was involved, and that the statute [6] requires that he be given notice in writing, showing the grounds, of such proposed action. He also says the Commission violated Section 319(c) of the Communications Act.[7]

First, considering Wilson's appeal, we agree that the decision and opinion in L. B. Wilson, Inc. v. Federal Communications Comm., supra, are still good law in so far as pertinent here; they were not modified, in respects here pertinent, by the subsequent WJR cases [8] either in the Supreme Court or in this court. This court was unanimous in the view that, if a petition for reconsideration of a construction permit states facts which raise a substantial question as to objectionable interference with an existing license, the petitioner is entitled to a hearing. The difficulty concerns the type of hearing to which such a petitioner is entitled. This court held that the Commission could, as a first step, test the validity of the petition as if upon demurrer and, after oral argument, rule upon its sufficiency as a matter of law assuming its allegations to be correct. That view was adhered to in the subsequent WJR cases. So we must conclude that in the case at bar the Commission could in an initial procedural step subject Wilson's claims to a test as a matter of law upon an oral argument. In this phase of the case we sustain the view of the Commission that an oral argument fulfills the requirements for a hearing upon the legal question posed upon the face of the petition.

The next phase of the Wilson appeal is whether the Commission was correct in the action it took, after the oral argument, upon Wilson's pleadings. It is true that it denied Wilson's contentions, but the difficulty with Wilson's appeal from that denial is that at the same time the Commission was denying the petition it so modified the Hofheinz operation as to eliminate the causes of Wilson's objections. We think we must be realistic in such a situation. We do not interpret the Commission's order as a final disposition of the daytime sky-wave problem. We do not understand Wilson's objections to relate to the past. Its objection relates to a future condition which would arise, it says, if Hofheinz were permitted to operate non-directionally daytime. Hofheinz has been denied that operation until decision has been reached upon the problems of Daytime Skywave. We think it sensible and just to let consideration of Wilson's problems await that decision, and it is not necessary that its petitions be pending for that purpose. Therefore we will not require that Wilson be given an evidentiary hearing at this stage of events. When solution of the Daytime Skywave problem has been reached Wilson will have ample opportunity to assert its rights to protection.

We come then to Harbenito's (Hofheinz's) appeal. It says, as we have indicated, that it was entitled to notice of an impending revision of the modification of its permit. We agree that it was, but the question is whether it received notice. It certainly had notice that the grant of its requested non-directional daytime operation was the matter to be heard; a petition for reconsideration of that grant was one of the pleadings set for argument. It certainly had notice that daytime skywave interference caused by its daytime non-directional operation was to be the subject of the hearing; the petition clearly so described its basis. It seems to us that the notice was sufficient.

6. Sec. 316, 66 Stat. 717 (1952), 47 U.S.C.A. § 316.

7. 48 Stat. 1089 (1934), as amended, 47 U.S.C.A. § 319(c).

8. WJR, the Goodwill Station v. Federal Communications Comm., 1948, 84 U.S. App.D.C. 1, 174 F.2d 226, reversed, 1949, 337 U.S. 265, 93 L.Ed. 1353, 69 S.Ct. 1097, mandate followed, 1949, 85 U.S. App.D.C. 392, 178 F.2d 720; WJR, The Goodwill Station v. Federal Communications Comm., 1948, 84 U.S.App.D.C. 23, 174 F.2d 248.

Harbenito then says that the Commission violated Section 319(c) of the statute[9] in refusing to issue it a license. That section reads as follows:

"(c) Upon the completion of any station for the construction or continued construction of which a permit has been granted, and upon it being made to appear to the Commission that all the terms, conditions, and obligations set forth in the application and permit have been fully met, and that no cause or circumstance arising or first coming to the knowledge of the Commission since the granting of the permit would, in the judgment of the Commission, make the operation of such station against the public interest, the Commission shall issue a license to the lawful holder of said permit for the operation of said station. * * * "

Harbenito says that it fully met all the terms, conditions and obligations set forth in the construction permit, that no material cause or circumstance first came to the knowledge of the Commission after the granting of the permit, and that therefore the Commission had a mandatory duty under the statute to issue the license.

The Commission emphasizes that it did not refuse the license. It postponed action on it until the Daytime Skywave problem has been resolved, and it lifted that problem from the Clear Channel case, in which it had been included with consequent delay due to other complexities in that case. The pending action, says the Commission, is one of short delay and not of rejection. The Commission then says that causes and circumstances which first came to its knowledge after the initial grant of the construction permit made the present operation (not permanently but temporarily) of the station against the public interest in its judgment. Its position in this regard involves the somewhat complicated factual situation which we sketched in the beginning of this opinion.

Stations newly licensed for nighttime operation have long been restricted in the manner of their operation so as to prevent interference to existing stations by skywave from the new station, but daytime skywave interference has, as we have indicated, been an unsolved problem. When the Commission in 1947 initiated the Daytime Skywave study, it did not know what restrictions it might eventually put on daytime operation and it thought it not wise to permit interim expensive installations which might later be denied operation. It froze, i. e., withheld action on, all applications proposing new or increased daytime-only facilities on clear channels. In 1950 it codified that policy. But the Commission continued to process full-time, i. e., both day and night, applications, because, since it was known that such installations would have to be equipped for restricted operation at night on account of skywave, it would be a simple matter to shift the hours of that restriction forward or backward a few hours to allow further for the skywave, if such further adjustment later became necessary. For example, the station could be required to use for a few more hours the antenna and power it was already required to use at nighttime. In other words, a station built to operate on a clear channel both day and night could easily be adjusted to a new schedule necessitated by whatever might come out of the Daytime Skywave case, but a station built for daytime operation only, without allowance for skywave, might require extensive and expensive rebuilding. This was the situation when the modified construction permit for a full-time station was granted Harbenito.

The Commission says that, when Wilson filed its data in the present case, the magnitude of the impact on existing stations of the daytime operation of a full-time station on a clear channel first came to its (the Commission's) attention. It

9. Supra note 7.

tells us that Wilson demonstrated that for an hour and forty minutes after sunrise and for a similar period before sunset the interference by skywave from Harbenito would, at its highest, affect over 63 per cent of the population residing within Wilson's normally protected contour. Thereupon the Commission decided that new applications for full-time operation on clear channels had best be held in abeyance, as it was already holding daytime-only applications. Its reasoning, the Commission tells us, was that, although full-time stations might more easily be conformed to altered operation than daytime-only stations could be, nevertheless as more and more full-time operations were authorized it would become more and more difficult, both practically and legally, to adopt rules curtailing the daytime service. Each such station would incur financial and contractual commitments, such as advertising contracts, as it went on the air. The accumulated weight of these obligations and the corresponding benefits would become a heavy consideration in the scale of final decision. The Commission says, as we have indicated, that it did not realize until the present case what a major effect the daytime skywave actually has on the existing stations. It says that the revelations in Wilson's showing constituted sufficient "cause or circumstance arising or first coming to the knowledge of the Commission since the granting of the permit" within the statutory provision.

Under its new policy the Commission ordered deferral of consideration of Harbenito's license application, but it did not set aside the modified construction permit. It took this course, it tells us, so as to put Harbenito in the same situation as other permittees when the Daytime Skywave decision is made, while at the same time precluding any unfair results to Harbenito by reason of new applicants but preserving to the Commission the flexibility of its rule-making power as against existing licensees.

To this position of the Commission Harbenito replies that the Commission knew as much about daytime skywave in 1947 as it knows now, which is proven, it says, by the fact that the measurements and other data upon which Wilson bases its showing were all taken from studies put in the Commission's files in 1947. To this the Commission in turn replies that, although the data in general scientific terms existed in 1947, a specific application to a given situation was not then available, and, further, that in those days it was granting very few full-time applications on clear channels and so was not acutely cognizant of the practical results of the scientific phenomenon.

In this state of affairs a reviewing court faces two difficulties which militate against its attempting to compel the Commission to issue a license. In the first place it is difficult, if not impossible, upon facts such as these to say that causes and circumstances came to the knowledge of the Commission earlier than it says they did. In the second place what is in the public interest is, as the Supreme Court has said many times, within wide limits for the Commission to determine. We note that in the present case we do not have a rejection of an application or even an indefinite postponement of its consideration. We have merely a temporary postponement. We think that the state of facts shown in this proceeding, considered in the light of our limited function of review, does not warrant our reversal or modification of the Commission's order in respect to Harbenito.

In view of the foregoing, other contentions need not be discussed. We have considered them, and they do not alter our conclusions.

The Commission's order will be

Affirmed.