**FEDERAL BROADCASTING SYSTEM, Inc., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**WBBF, Inc., Intervenor.**

**No. 12494.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 6, 1955.

Decided Feb. 23, 1956.

As Modified on Denial of Rehearing April 13, 1956.

made under the provisions of Section 309(c) of the Federal Communications Act, 47 U.S.C.A. § 309(c), was based on two main grounds, which may be summarized as follows: (1) that WBBF was chargeable with "arbitrary refusal to grant consent pursuant to Section 325 (a) of the [Communications] Act [47 U.S.C.A. § 325(a)] for Station WSAY to rebroadcast sponsors' programs", and (2) that WBBF had put in effect an arrangement whereby advertisers who patronized both WBBF and another radio broadcasting station under common control with it and partly overlapping its service area would receive a 25% discount from the usual rates, constituting unfair competition and causing Federal Broadcasting a loss of some $16,000 in advertising accounts.

Mr. Charles F. O'Neall, Washington, D. C., with whom Messrs. John W. Cross, Cary McN. Euwer and Francis C. Brooke, Washington, D. C., were on the brief, for appellant.

Mr. Daniel R. Ohlbaum, Counsel, Federal Communications Commission, with whom Messrs. Warren E. Baker, Gen. Counsel, Federal Communications Commission, and J. Smith Henley, Asst. Gen. Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. Vernon L. Wilkinson, Washington, D. C., for intervenor. Mr. James A. McKenna, Jr., Washington, D. C., also entered an appearance for intervenor.

Before BAZELON, WASHINGTON and BASTIAN, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an appeal from an order of the Federal Communications Commission, dated July 16, 1954, dismissing a protest filed by Federal Broadcasting Company (as proprietor of radio station WSAY) against a Commission order granting radio station WBBF a renewal of its broadcasting license. The protest,

The Commission dismissed Federal's protest "for failure to specify with particularity facts, matters and things relied upon which warrant the designation of the WBBF application for hearing under Section 309(c) of the Communications Act." With respect to the re-broadcasting aspect of the protest, the Commission said:

"* * * it does not appear from the pleadings before us that any requests to rebroadcast any of the programs of Station WBBF have been made by Federal since August 26, 1953, when the Commission granted an application for the transfer of the station (then WARC) to the present owner.[1] Although the present protest alleges generally that the new owner of Station WBBF has continued the policy of the prior owner with respect to withholding consent for Station WSAY to rebroadcast the programs of Station WBBF, this conclusion is not accompanied by any allegation of any request made subsequent to the transfer to rebroadcast any programs broadcast by WBBF and WBBF says no such request has been made."

"1. It may be noted that the Commission has previously considered complaints by Federal of the refusal of the previous licensee of WBBF to accede to blanket requests to rebroadcast certain general categories of programs. This was done in connection with the transfer, which was opposed by Federal upon this ground, and the Commission found that a grant of the transfer was in the public interest."

We think that this was an insufficient reason on which to base a conclusion of "lack of particularity." As the Commission says in its footnote 1, above quoted, Federal had previously complained of refusals by the former owners of WBBF to allow re-broadcasts. The Commission had nevertheless allowed the transfer of ownership, finding no violations of law,[1] and concluding that to grant the transfer was in the public interest. Federal continued to challenge this ruling through a petition for reconsideration and other papers. The Commission did not finally affirm its action on the transfer until May 20, 1954, the same day it granted renewal of WBBF's license. The new owners[2] of WBBF had resisted vigorously all of Federal's attacks on the transfer, and nowhere showed any inclination to grant any re-broadcast privileges to Federal. Under the circumstances, Federal's failure to allege a demand on and refusal by the new owners was hardly a "lack of particularity." Compare Federal Broadcasting Co. v. Federal Communications Commission, 96 U.S.App.D.C. 260, 225 F.2d 560, certiorari denied 1955, 350 U. S. 923, 76 S.Ct. 212.

As to the second aspect of Federal's protest, the combination advertising rate for Station WBBF and Station WGVA, the Commission said:

" * * * the protest contains no allegations which would indicate in any way that there is a violation of Federal law or public policy. The opposition to the protest states that there is no requirement that an advertiser buy time on both stations in order to use the facilities of either one. Therefore the general allegation in the protest that the licensee of Station WBBF grants a discount to advertisers who purchase time on both WBBF and WGVA (whose service areas overlap, but not substantially) and that this policy constitutes unfair competition, is insufficient, in the absence of any further facts, to warrant designation of the renewal application for hearing. This conclusion follows from our decisions in T. E. Allen & Sons, Inc., 9 Pike & Fischer, R.R. 590a, and Salinas Broadcasting Corp., 9 Pike & Fischer, R.R. 595, in which we held that Section 309(c) of the Act requires that a protestant must do more than set forth conclusory arguments unsupported by facts stated with specificity."

Federal says that "The Commission bases its dismissal of the protest in this respect on the *denial* of WBBF of the protestant's allegations. * * * Fundamental justice would require that where an issue is framed by

**1.** This was communicated to Federal Broadcasting by letter dated August 26, 1953, rather than by an order.

**2.** We use the expression "new owners," as we assume for present purposes that the Commission was entitled to regard them as such. Cf. Mansfield Journal Co. v. Federal Communications Commission, 1950, 86 U.S.App.D.C. 102, 180 F.2d 28. At the same time, we recognize the force of appellant's argument that the corporate structure of the licensee of Station WBBF had not changed, although the name had been changed and the Federal Communications Commission had allowed the former stockholders to transfer their shares to a purchaser. The Commission appears to concede that the facts in this regard are as alleged by appellant. Commission's Br. 1–2. Appellant urges that the policies of the corporate licensee, once announced, must be assumed to have continued without change unless and until a change is formally made: citing Schenley Distillers Corp. v. United States, 1946, 326 U.S. 432, 435, 66 S.Ct. 247, 90 L.Ed. 181; Federal Communications Commission v. WOKO, 1946, 329 U. S. 223, 227, 67 S.Ct. 213, 91 L.Ed. 204.

the interested parties, that issue should be resolved by the hearing provided for in the statute and not by the arbitrary act of accepting as determination the controverted allegations of one of the adversary parties." The question just posed is a difficult one. Section 309(c) says nothing whatever about the filing of any pleading in opposition to a protest: much less does it say that the Commission can rely on a statement of fact in such a pleading in opposition as a basis for dismissing the protest. Certainly in the absence of some established procedural system to the contrary, we think it improper to rely solely on an opposition pleading as a basis for a finding of fact.[2a] In the present case, the protest does not say whether or not WBBF and WGVA require an advertiser to buy time on both stations in order to use the facilities of either one. To read this silence as an admission by the protestant that no such requirement is ever made would, we think, impose too heavy a burden—and we do not read the Commission's language as having imposed any such burden. And we find no lack of particularity in the text of Federal's protest with regard to the combination advertising rate. The Commission's order is therefore vulnerable as to both elements of the protest.

██ At the same time, we do not wish to be understood as saying that the Commission may not ultimately—for some good reason—be able to justify a denial of the protest without hearing. We do not pass on that question: we do not decide whether or not the matters alleged by Federal "would tend to

show, if established at a hearing, that the grant of the license contravened public interest, convenience and necessity, or that the licensee was technically or financially unqualified, contrary to the Commission's initial finding." Federal Broadcasting Co. v. Federal Communications Commission, supra, at page 263 of 96 U.S.App.D.C. and at page 563 of 225 F.2d. We do not understand that the Commission has passed on the substantive issues here involved: at least it has not done so with clarity. True, it advised Federal by letter in an earlier proceeding that WBBF's refusal to allow re-broadcast privileges did not contravene the Commission's rules or the Communications Act. And it said in its latest order (that of July 16, 1954) that the discount arrangement did not violate any Federal law or public policy. But lack of actual violation of law or regulation is not decisive: the question is whether the alleged conduct is contrary to the public interest, or otherwise demonstrates unfitness of the licensee.[3] Cf. Mansfield Journal Co. v. Federal Communications Commission, supra note 2. The Commission should approach the matter in that light. Only if it is clear from the face of the protest, taking all the protestant's allegations as true, that there is no real merit in protestant's position or substantial possibility that a hearing will reveal merit, should the protest be rejected without a hearing.

Under these circumstances, we think that the Commission's order should be vacated, and that it should thereupon proceed in a manner not inconsistent with this opinion.

2a. In a petition for rehearing filed with this court shortly after the rendition of our opinion, the Commission said that in denying the protest it "did not rely on the opposition to find a material fact contrary to the allegations in the protest." As to this, we rest on the Commission's published opinion. The Commission also stated that under the Commission's rules (Section 1.730, 1 Pike & Fischer, RR 51.-730), Federal had five days in which to reply to WBBF's opposition but did not

do so. Under the circumstances, we do not regard this as conclusive.

3. The Commission has said: "A refusal either by a network affiliate, or a non-network station, to permit a rebroadcast where based upon no reasons at all, or upon unreasonable grounds may well constitute conduct going to the qualifications of a licensee to operate in the public interest." F.C.C. Report and Order, May 14, 1952. In the Matter of Amendment of Sections 3.191, et al., Docket No. 9808.

The foregoing views are based on our interpretation of the statutes as they stood at the time of the Commission's challenged action. After this case was argued here, and while it was under advisement, there was enacted Public Law 391, 84th Congress, 2nd Session, approved January 20, 1956, 47 U.S.C.A. § 309(c). We do not deem it necessary or appropriate to decide here and now whether the new legislation is to be applied retroactively, or, if it is to be so applied, in what manner (if at all) it affects the present case. Those questions have not been presented to us by the parties. If they are raised, they should be dealt with in the first instance by the Commission.

So ordered.