**CLEAR CHANNEL BROADCASTING SERVICE and WSM, Inc., Petitioners**

**v.**

**UNITED STATES of America and the Federal Communications Commission, Respondents.**

**No. 15552.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 15, 1960.

Decided Oct. 27, 1960.

Mr. Joseph DuCoeur, Washington, D. C., with whom Messrs. Reed T. Rollo and R. Russell Eagan, Washington, D. C., were on the brief, for petitioners.

Mr. Max D. Paglin, Asst. General Counsel, Federal Communications Commission, and Mr. Richard A. Solomon, Attorney, Department of Justice, with whom Asst. Atty. Gen. Robert A. Bicks, and Messrs. John L. FitzGerald, General Counsel, Federal Communications Commission, and Richard M. Zwolinski, Counsel, Federal Communications Commission, were on the brief, for respondents.

Before EDGERTON, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a petition to review and set aside an order of the Federal Communications Commission promulgated September 18, 1959, and supplemented on October 21, 1959. The petitioners represent the interests of the so-called clear channel Class I standard radio broadcasting stations. They complain that the order under review, dealing with the problem of interference caused by daytime "skywave" radiation,[1] adversely affects those interests.

---

1. "Skywave" interference is described as that interference which is produced when radio waves radiated into space are refracted back to the earth by the ionosphere. Because of daily changes in the

It appears that in 1947 the Commission began hearings on the subject of daytime skywave interference, in Docket No. 8333; that in 1954 it issued a proposed report, as to which it invited comments; and that in 1959, after receiving the comments of petitioners and others, it entered the order now under review, substantially along the lines of its 1954 proposal. In 1954, when it offered its proposal, the Commission said that "Class I stations are not, in fact, receiving an adequate degree of protection from interference during the early morning and late afternoon hours in the light of our existing standard broadcast allocation theory." See 10 Pike & Fischer, Radio Regs. 1541, 1550. The 1959 decision does not in terms repeat this statement, though it does say that the Commission affirms the "basic conclusions" it reached in 1954.

The gist of petitioners' present complaint is that the Commission's final order is inconsistent with what they claim was the original aim of the proceedings—to reduce the interference suffered by petitioners' Class I stations from the operations of Class II stations [2]—and actually

tends to increase such interference. The Commission denies this, saying that petitioners will now have a measure of protection, whereas previously they had none. We think the Commission has the better of the argument. Certainly the 1954 statement that Class I stations were not then receiving adequate protection is not a "finding" of a sort which would render invalid the proposals then being offered, or the adoption of the substance of those proposals five years later. To be sure, the evidence might perhaps have justified some other solution, more favorable to the petitioners. But the interests of Class I stations were weighed by the Commission against those of other classes, and we cannot say, on the record before us, that the result reached was arbitrary, capricious, or an abuse of the Commission's discretion.[3] The solution reached, which the Commission concluded was "a reasonable balance" between "permitting excessive interference and imposing prohibitive restrictions on Class II stations," was adequately based on the evidence, and within the broad powers of the Commission.[4] The statistical and scientific methods used by the

action of the ionosphere which impair its capacity to reflect back skywave signals during daylight hours, daytime interference of this kind is a factor chiefly in the two-hour periods before sunset and after sunrise, during which time skywave radiations gradually build up to and decline from their nighttime peak. See Harbenito Broadcasting Co. v. Federal Communications Commission, 1954, 94 U.S.App.D.C. 329, 331, 218 F.2d 28, 30.

2. As to the differences between Class I and Class II stations, see 47 C.F.R. §§ 3.21 et seq. (1958 ed., as amended, Supp. 1960); American Broadcasting Co. v. Federal Communications Commission, 1951, 89 U.S.App.D.C. 298, 191 F.2d 492, at footnote 1.

3. The petitioners' situation with regard to existing stations is left as it is, except that no change in operations of such a station may be made which would increase daytime skywave interference beyond existing levels. Such existing levels may exceed those permitted to new stations, under the limitations defined in the order and imposed on new stations.

4. Section 303(f) (r) of the Communications Act of 1934, as amended, 47 U.S. C.A. § 303(f) (r), provides:

"Except as otherwise provided in this chapter, the Commission from time to time, as public convenience, interest, or necessity requires, shall—
* * * * *
"(f) Make such regulations not inconsistent with law as it may deem necessary to prevent interference between stations and to carry out the provisions of this chapter: Provided, however, That changes in the frequencies, authorized power, or in the times of operation of any station, shall not be made without the consent of the station licensee unless, after a public hearing, the Commission shall determine that such changes will promote public convenience or interest or will serve public necessity, or the provisions of this chapter will be more fully complied with;
* * * * *
"(r) Make such rules and regulations and prescribe such restrictions and conditions, not inconsistent with law, as may be necessary to carry out the provisions

224

Commission, and attacked by the petitioners, have not been demonstrated to be inaccurate or unfair.

We need not, and do not, pass on other contentions made by the parties.

Affirmed.

of this chapter, or any international radio or wire communications treaty or convention, or regulations annexed thereto, including any treaty or convention insofar as it relates to the use of radio, to which the United States is or may hereafter become a party."