INTERSTATE BROADCASTING COM-
PANY, Inc., Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,

Patchogue Broadcasting Company, Inc.,
Intervenor.

INTERSTATE BROADCASTING COM-
PANY, Inc., Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,

Grossco, Inc., a Connecticut corporation,
Intervenor.

Nos. 17070, 17071.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 15, 1963.

Decided April 30, 1963.

Motions for Modification Denied
June 10, 1963.

Mr. Maurice M. Jansky, Washington, D. C., with whom Messrs. Philip G. Loucks and Carl H. Imlay, Washington, D. C., were on the brief, for appellant.

Mr. Richard M. Zwolinski, Counsel, Federal Communications Commission, with whom Messrs. Max D. Paglin, General Counsel, and Daniel R. Ohlbaum, Associate General Counsel, Federal Communications Commission, were on the brief, for appellee. Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, also entered an appearance for appellee.

Mr. Mark E. Fields, Washington, D. C., with whom Mr. Samuel Miller was on the brief, for intervenor Patchogue Broadcasting Company, Inc., in No. 17070.

Mr. Howard F. Roycroft, Washington, D. C., with whom Mr. Stanley S. Harris, Washington, D. C., was on the brief, for intervenor Grossco, Inc., in No. 17071.

Before BAZELON, Chief Judge, EDGERTON, Senior Circuit Judge, and WASHINGTON, Circuit Judge.

EDGERTON, Senior Circuit Judge.

I—THE PATCHOGUE CASE

Appellant Interstate Broadcasting Company (herein WQXR) is licensee of radio station WQXR(AM), a Class I–B station operating on 1560 kc in New York City. On July 15, 1959 the Commission, without a hearing, granted to intervenor Patchogue a construction permit for 1570 kc in Riverhead, Long Island. Appellant filed a protest under § 309(c) of the Communications Act of 1934 as amended, 70 Stat. 3, 47 U.S.C. § 309(c),[1] contending that the grant to Patchogue (1)

1. Since amended, 74 Stat. 889 (1960).

modified WQXR's license and (2) caused economic injury to WQXR by impairing its competitive position among other Class I stations in New York City; also (3) that this grant and the destruction of WQXR's service in the Riverhead area were not in the public interest. Appellant did not seek a hearing on contention (2) but apparently relied on it only for purposes of standing. The Commission dismissed the protest on September 9, 1959. 18 Radio Reg. 862a.

On appeal to this court from the order of dismissal, the parties stipulated that the issue was whether the allegations of economic injury were sufficient to show that WQXR was a "party in interest" within § 309(c) and therefore entitled to be heard on Patchogue's application. We held the allegations sufficient and remanded the case to the Commission. Interstate Broadcasting Co. v. Federal Communications Commission, 109 U.S.App. D.C. 190, 285 F.2d 270 (1960) (No. 15406).

■ The Commission made WQXR a party and heard argument on whether an evidentiary hearing was required by § 309(c). On May 7, 1962, by the decision here on appeal, a majority of the Commission, without an evidentiary hearing, denied appellant WQXR's protest and granted intervenor Patchogue's application. 32 F.C.C. 896, 23 R.R. 435.

WQXR contends that our opinion in No. 15406 directed the Commission to hold an *evidentiary* hearing. Although WQXR was entitled to a "hearing," [2] as to legal issues this requirement is sat-

isfied by oral argument.[3] Decision of WQXR's appeal in the Patchogue case therefore turns on issues common to both cases which we discuss in Part III of this opinion.

## II—THE GROSSCO CASE

Grossco, Inc., and Berkshire Broadcasting Corporation filed mutually exclusive applications for radio broadcast licenses to operate on 1550 kc at West Hartford and Hartford, Connecticut, respectively. The Commission designated these applications and others for comparative hearing. Berkshire merged with Grossco and dismissed its application. WQXR petitioned to intervene as a "party in interest" under § 309(b) of the Communications Act. The Commission denied the petition for want of standing. We reversed and remanded the case to the Commission. Interstate Broadcasting Co. v. Federal Communications Commission, 109 U.S.App.D.C. 255, 260, 286 F.2d 539, 544 (1960) (No. 15561).

The Commission then made WQXR a party but ruled that it could not introduce evidence as to interference beyond its 0.5 mv/m contour. On May 28, 1962, by the decision here on appeal, a majority of the Commission granted Grossco's application. 32 F.C.C. 1105, 23 R.R. 707.

■ Standing was the only issue we decided when the Grossco case was here before. Section 309(b) of the Communications Act, 66 Stat. 715 (1952), does not in terms provide for trial of the issues on which the right to intervention is based.[4] It provides that "parties in

2. We said: "Consequently, the orders appealed from will be set aside, so the Commission may conduct a hearing on Patchogue's application, at which Interstate will be a party. We emphasize the fact that we intimate no opinion on the merits of the protest." 109 U.S.App. D.C. at 193, 285 F.2d at 273.

3. See, e. g., Harbenito Broadcasting Co. v. Federal Communications Commission, 94 U.S.App.D.C. 329, 332, 218 F.2d 28, 31 (1954); WJR, The Goodwill Station v. Federal Communications Commission, 84 U.S.App.D.C. 23, 26, 174 F.2d 248, 251 (1948); Federal Broadcasting System v.

Federal Communications Commission, 97 U.S.App.D.C. 293, 297, 231 F.2d 246, 250 (1956).

The 1956 revision of § 309(c), by specifying "opportunity for oral argument", recognizes this principle and removes any doubt created by Clarksburg Publishing Co. v. Federal Communications Commission, 96 U.S.App.D.C. 211, 225 F.2d 511 (1955). Senate Report No. 1231 on H.R. 5614, 2 [1956] U.S.Code Cong. & Admn.News 2195.

4. Although Clarksburg Publishing Co. v. Federal Communications Commission, 96 U.S.App.D.C. 211, 214, 225 F.2d 511, 514

interest * * * may acquire the status of a party * * * by filing a petition for intervention showing the basis for their interest * * *. Any hearing subsequently held * * * shall be a full hearing in which the applicant and all other parties in interest shall be permitted to participate but in which both the burden of proceeding with the introduction of evidence upon any issue specified by the Commission, as well as the burden of proof upon all such issues, shall be upon the applicant." We think this requires consideration only of issues which affect the merits of the application for a license. In Clarksburg Publishing Co. v. Federal Communications Commission, 96 U.S.App.D.C. at 215, 225 F.2d at 515, we said that in a hearing under § 309(b) the Commission must consider "any issue which may be relevant in determining the legality of the challenged grant."

■ The issue created here by withdrawal of one of two mutually exclusive applications is analogous to that in Interstate Broadcasting Co. v. Federal Communications Commission, 105 U.S. App.D.C. 224, 265 F.2d 598 (1959). There we held that the § 307(b) issue of "fair, efficient, and equitable distribution of radio service" remained and the applicant had the burden of meeting it. So in the present case, the Commission was bound to consider on remand all issues bearing on whether the public interest, convenience and necessity would be served by a grant to Grossco. Its refusal in its order of June 23, 1961 to designate the issues anew or clarify or add to them did not affect WQXR's substantial rights, because it did not modify the Commission's obligation to receive evidence bearing on the question whether the alleged loss of WQXR's service was consistent with the "public interest, convenience, and necessity". Cf. Mansfield Journal Co. v. Federal Communications Commission, 86 U.S.App.D.C. 102, 110, 180 F.2d 28, 36 (1950), quoted in Deep

South Broadcasting Co. v. Federal Communications Commission, 107 U.S.App. D.C. 384, 386, 278 F.2d 264, 266 (1960).

■ Grossco's failure to give the public notice now required by § 311(a) as amended by the Act of September 13, 1960, 74 Stat. 892, may have prevented WQXR listeners in the Hartford area from attempting to protect their interests, but the Commission's decision that the amendment was not applicable was reasonable and should not be disturbed. We think the Commission has discretion to determine, where Congress has not specified, when new broadcast legislation applies to proceedings in progress. Cf. Federal Broadcasting System v. Federal Communications Commission, 99 U.S. App.D.C. 320, 322, 239 F.2d 941, 943 (1956).

### III—ISSUES COMMON TO BOTH CASES

■ 1. The appealed orders do not modify WQXR's license, and the hearing requirements of § 316 of the Act and the First KOA case, Federal Communications Commission v. National Broadcasting Co., 319 U.S. 239 (1943), do not apply. WJR, The Goodwill Station Inc. v. Federal Communications Commission, 85 U.S.App.D.C. 392, 178 F.2d 720 (1949), held that permitting interference beyond a normally protected contour did not modify a license. The First KOA case held only that a station's license is modified by subjecting it to objectionabe interference against which the Commission's rules protect it; the rules are in effect terms of the license. KOA as a Class I–A station was entitled by the Commission's rules to an unduplicated or exclusive frequency.

■ The Commission's rules do not, as appellant contends, "give absolute protection to WQXR's entire primary service area". Under the rules, "The term 'primary service area' of a broadcast station means the area in which the groundwave is not subject to objectionable interfer-

(1955), had equated the hearings required by § 309(b) and § 309(c), Congress did not amend § 309(b) as it did

§ 309(c) by specifying "opportunity for oral argument". Cf. note 3, supra.

ence or objectionable fading." 47 C.F.R. § 3.11(a). But "primary service areas" are "subject to *limitation* by * * * interference from other stations to the contours set out for each class of station." § 3.182(h) (emphasis supplied).[5] By definition, therefore, an area in which there is objectionable interference no longer is, if it ever was, within the "primary service area".[6] Sections 3.21(a) (1) and 3.182(a) (1), on which WQXR relies, summarize the results of the foregoing sections and integrate them into an allocation scheme but do not themselves establish protected contours.

2. Should the Commission have considered interference to WQXR between its 0.5 mv/m and 0.1 mv/m contours?

■■ Under the Commission's allocation scheme Class I stations are designed to and do serve extended areas. Impairment of their service requires justification.[7] The Commission seems to take the position that it may deprive listeners of a recognized[8] but unprotected[9] service without determining that such deprivation is consistent with the public interest. The concept of a protected contour implies a legislative judgment by the Commission that new services which destroy an existing service beyond that contour are normally more in the public interest than the service they destroy. In effect the Commission's rules embody this judgment. It is a reasonable one and within the Commission's discretion. Cf. Guinan v. Federal Communications Commission, 111 U.S.App.D.C. 371, 374–375, 297 F.2d 782, 785–786 (1961).

■■ Unless a party alleges "reasons, sufficient if true, to justify a

change or waiver of the Rules", the Commission may apply its rules without the full hearing required by § 309(b). United States v. Storer Broadcasting Co., 351 U.S. 192, 205, 76 S.Ct. 763, 100 L.Ed. 1081 (1956); cf. National Broadcasting Co., Inc. v. United States, 319 U.S. 190, 225, 63 S.Ct. 997, 87 L.Ed. 1344 (1943).[10] But WQXR contended throughout the proceedings here involved that special circumstances did justify protecting its primary service area from interference beyond the 0.5 mv/m contour. The Commission did not deal adequately with this contention. In the Patchogue opinion it said "No such circumstances have been shown to be present." In the Grossco opinion it said "there is no question but what the need for Grossco's service outweighs the need for the service to be lost by reason of interference." But these conclusions are by no means self-evident, and in neither case did the Commission explain them or support them with more specific findings.

"The Commission's conclusion as to added service, and that this is 'clearly in the public interest,' * * * seems to us to lack adequate explanation." Television Corp. of Michigan v. Federal Communications Commission, 111 U.S. App.D.C. 101, 104, 294 F.2d 730, 733 (1961). "The expression of a bare conclusion * * * does not reveal 'the basis' for the conclusion required by 47 U.S.C. § 409(b) (1952), 66 Stat. 721 (1952) [superseded by 5 U.S.C. § 1007]. * * * The statutory duty of this court to review the action of the Commission cannot be performed without a fuller statement of its reasons for its conclusion." Telanserphone, Inc. v. Federal

---

5. The "protected" and the "normally protected" contours of the various classes of stations are set out in § 3.182(a).

6. It is within the "intermittent service area" defined by §§ 3.11(c) and 3.182(j).

7. Cf. Television Corp. of Michigan v. Federal Communications Commission, 111 U.S.App.D.C. 101, 294 F.2d 730 (1961), and Hall v. Federal Communications Commission, 99 U.S.App.D.C. 86, 237 F.2d 567 (1956), both of which involved

deprivation of recognized service by transmitter relocation; Democrat Printing Co. v. Federal Communications Commission, 91 U.S.App.D.C. 72, 202 F.2d 298 (1952).

8. 47 C.F.R. §§ 3.11(a), 3.182(f).

9. Id., § 3.182(a) (1) (ii).

10. Though these two cases are cast in terms of applicants' requests for waivers, the principle applies equally to the cases now before us.

Communications Commission, 97 U.S. App.D.C. 398, 401, 231 F.2d 732, 735 (1956); Television Corp. of Michigan v. Federal Communications Commission, supra; cf. Harrell v. Federal Communications Commission, 105 U.S.App.D.C. 352, 267 F.2d 629 (1959). The Commission is required to consider "not only the public benefit from the operation of the new station, but also any public loss which it might occasion. Only by such a balancing can the Commission reach a legally valid conclusion on the ultimate question of the public interest." Democrat Printing Co. v. Federal Communications Commission, 91 U.S.App.D.C. 72, 75, 202 F.2d 298, 301 (1952).

■ We remand the cases so that the Commission may decide whether WQXR alleges "reasons, sufficient if true, to justify a change or waiver" of the Commission's legislative presumption in favor of a new adjacent channel service as against an existing service beyond the 0.5 mv/m contour. Allegations of injury to WQXR's listeners must be considered as bearing on the question of the public interest or lack of it in granting the applications of Patchogue and Grossco. If the Commission concludes that WQXR's specific factual allegations, construed in the light of the affidavits, testimony, and exhibits, if true, are sufficient to preclude grant of either application, it must offer WQXR an opportunity to prove the allegations. If the Commission concludes that the allegations are not sufficient it may decide both cases against WQXR, provided it supports its conclusions with explanations founded on sufficient findings of fact. In its discretion it may hold further hearings even if not required to do so.

We have held that the cumulative effect on WQXR of numerous small incursions upon its service area gives it standing as a party in interest. Interstate Broadcasting Co. v. Federal Communications Commission, 109 U.S.App.D.C. 190, 285 F.2d 270 (1960) (No. 15406). Since WQXR does not contend that the cumulative effect of the several co-pending applications in question will impair its

ability to serve the public in general, see Democrat Printing Co. v. Federal Communications Commission, 91 U.S.App. D.C. 72, 77–78, 202 F.2d 298, 303–304 (1952), we think on remand the Commission need not consider cumulative effects. Cf. Federal Communications Commission v. Sanders Bros. Radio Station, 309 U.S. 470, 473, 60 S.Ct. 693, 84 L.Ed. 869 (1940).

We all concur in this opinion and in Judge WASHINGTON'S.

Reversed and remanded.

WASHINGTON, Circuit Judge (concurring).

I think the language used by the Supreme Court in United States v. Storer Broadcasting Co., 351 U.S. 192 at 205, 76 S.Ct. 763 at 771, 100 L.Ed. 1081 (1956), and National Broadcasting Co. v. United States, 319 U.S. 190 at 225, 63 S.Ct. 997 at 1013, 87 L.Ed. 1344 (1943), compels the result reached, as expressed in the following passage in Judge Edgerton's opinion:

"We remand the cases so that the Commission may decide whether WQXR alleges 'reasons, sufficient if true, to justify a change or waiver' of the Commission's legislative presumption in favor of a new adjacent channel service as against an existing service beyond the 0.5 mv/m contour. Allegations of injury to WQXR's listeners must be considered as bearing on the question of the public interest or lack of it in granting the applications of Patchogue and Grossco. If the Commission concludes that WQXR's specific factual allegations, construed in the light of the affidavits, testimony, and exhibits, if true, are sufficient to preclude grant of either application, it must offer WQXR an opportunity to prove the allegations."

If the Commission grants a hearing, the ensuing delay will no doubt be substantial, and the expenses probably such as to be a heavy burden to Patchogue and Grossco, which evidently lack the

financial resources of WQXR. If the Commission decides against WQXR, without a hearing, a further appeal to this court by WQXR would seem probable.

As a practical matter, then, under our ruling, an established and powerful station can delay the grant of new applications for apparently available frequencies by setting up a barrage of allegations as to why the established station should be protected at distant points well beyond its normally protected contour, because of the "unique service" it renders. Allegations of this sort are not hard to make—as witness the advertising pages of any newspaper or magazine. The delays which can thus be produced by a large and well-financed station can readily be imagined. Patchogue's application was filed in 1957, Grossco's in 1959. The end is not yet in sight. The record of the proceedings in both cases, as filed in this court, totals 473 printed pages—largely the result of action taken by appellant Interstate (WQXR). Other cases involving related or similar appeals by Interstate have previously come to this court.[1] Granting Interstate's right to protect itself, its advertising revenues, and its listeners, in every legitimate way, and assuming that its assertions of superior programming are made in complete good faith, one must admit, I think, that the Commission's intention that new service to the public should be favored—an intention which is certainly reasonable—has thus far been effectively thwarted in this case.

The history of the problem is instructive. Prior to 1957, the Commission's rules (at Section 3.182(c) of the then text) provided that a station rendering service beyond its normally protected contour could obtain protection against new applications, on a case-by-case basis, where its general program service was unlike any being supplied or to be supplied by any other station in the area. In 1957, the Commission held rule-making proceedings on the subject, in which our appellant Interstate participated, and ultimately decided to delete the rule just described. The Commission said:

"The 'unique service' rule has served little or no useful purpose since its adoption. Its provisions are too vague and indefinite to be of any assistance in the filing and processing of applications for new and improved standard broadcast facilities and have prompted much uncertainty as to the protection to be afforded to and by standard broadcast stations. Nor would making the rule more specific resolve the difficulty since we are not aware of any satisfactory criteria for determining what constitutes the 'same general program service'. We are concerned, furthermore, by the fact that the rule may discourage applicants and prospective applicants for new and improved AM facilities by threatening expensive, time consuming hearings and may tend to persuade applicants to alter their proposals to protect established stations despite the fact that the watered-down proposals may render less service. For these reasons we believe that the 'unique service' rule is an unsatisfactory allocation tool and should be dispensed with. We believe that this amendment will encourage the establishment of more uniform, fixed allocation rules, thereby fostering a more effective and efficient AM broadcast service throughout the country." 16 Pike & Fischer R.R. 1501 at 1504 (1957).

■ Our decision today may in fact revive in large part the old rule just described, which the Commission for good and valid reasons discarded. Although our decision is compelled by the rulings of the Supreme Court in Storer and Na-

1. Interstate Broadcasting Co., Inc. v. Federal Communications Commission, 109 U.S.App.D.C. 190, 285 F.2d 270 (1960); Interstate Broadcasting Co., Inc. v. United States, 109 U.S.App.D.C. 255, 286 F.2d 539 (1960); Interstate Broadcasting Co., Inc. v. United States, 109 U.S.App.D.C. 260, 286 F.2d 544 (1960).

tional Broadcasting, those rulings also show, in my view, that on remand the Commission can and should take into account the reasons which led it to abandon the former rule.